THE ELLICOTTVILLE AND GREAT VALLEY PLANK ROAD
    COMPANY *vs.* THE BUFFALO AND PITTSBURGH RAIL ROAD
    COMPANY.

Proof that a plank road company has, in accordance with the statute, been duly
    incorporated and organized, and has built its road, and procured the same to
    be inspected, and has erected toll gates thereon, and is in the actual use, oc-
    cupation and enjoyment of the road, is sufficient to enable the company to
    maintain an action of trespass, for an entry upon the road, against any persons
    who do not show a better right to the possession of it in themselves.

Since the act of 1851, in relation to rail road companies, such companies have no
    right to enter upon, occupy or cross a turnpike or plank road, without the
    consent of the owners, except upon the condition of first paying the damages
    sustained by the turnpike or plank road company, after the same shall have
    been ascertained under the statute.

Although, by the 5th subdivision of the 28th section of the general rail road act,
    a rail road company is empowered to construct its road across, along or upon
    any stream of water, water course, street, highway, plank road, turnpike or
    canal, which the route of its road shall intersect or touch, this provision is to
    be construed as granting only the right which the public had in such streams,
    plank roads, turnpikes, &c. and not as attempting to grant any right to violate
    private property without the consent of the owners.

The maxim *de minimis non curat lex* is not an appropriate answer to an action
    for violating a clear legal right.

THIS was an appeal from a judgment entered in favor of the
    defendants, upon the report of a referee. The action was
brought by the Plank Road Company, to restrain the Rail Road
Company from entering upon the lands and premises of the
plaintiffs for the purpose of constructing their rail road at the
points mentioned in the complaint, and from removing the
planks and grading from the plaintiffs' premises; and from de-
positing, within the premises of the plaintiffs, materials for the
construction of the rail road; and from running locomotives and
cars upon and over the plaintiffs' plank road, at the places and
points mentioned; and to recover damages for injuries already
done.

The defendants, by their answer, denied all the facts stated in
the complaint. And for a further answer to the complaint,
stated, 2d. That the places and routes claimed by the plaintiffs
for their plank road are a *public highway*, and were so at the

time the defendants were said to have entered on the same ; and that the defendants' rail road necessarily runs along the line of the highway, and that the defendants had carried the highway over the track of their rail road, at the points mentioned, and had restored the highway to its former state, and had not unnecessarily impaired its usefulness. 3d. That the track of their rail road necessarily crosses and runs along and upon the plank road ; that at the points mentioned in the complaint the defendants had carried the plank road over the rail road, and had restored the plank road to its former state, so as not in any manner to have impaired its usefulness, but had left the same in as good condition as it formerly was before the track of the rail road was constructed. The action was referred to a sole referee, for trial and determination. The referee, after the hearing before him, reported in substance the following facts. That in the year 1850, the plaintiffs duly filed articles of association, in the office of the secretary of state, and procured themselves to be duly incorporated, organized and formed into a company for the purpose of building a plank road, from the village of Ellicottville through the town of Great Valley, to Great Valley station on the New York and Erie Rail Road, in the county of Cattaraugus. That in pursuance of such organization, the said company went on and built and completed their said plank road, in the year 1851. That the road was located by the company and built along and upon the highway, through the town of Great Valley, at the points where the trespasses mentioned in the complaint in this action were alleged to have been committed ; and that, prior to the building of the plank road, the same had been used as a public highway for the period of twenty-one years and upwards. That James Nelson, at and prior to the formation of the plank road company and the making of the road, was the owner and occupant of the land, on both sides of the highway. That previous to the building of the plank road, the company *did not* procure the consent of the commissioners of highways of the town of Great Valley, nor of two-thirds of the inhabitants residing on the line of the road, nor had they, at any time since, done so. That prior to the time of the alleged tres-

passes, and after they had built their road, the plank road company had, in accordance with the statute, procured the road to be inspected, and had erected toll gates thereon, and were in the actual use, occupation and enjoyment of the same.

The referee further found and reported, that the defendants were duly organized as a rail road company, on the 7th day of October, 1852, for the purpose of building a rail road from the city of Buffalo to the New York and Erie Rail Road in the county of Cattaraugus; and that it became and was necessary for them to build on and across the said plank road in the said town of Great Valley, at the points where the said plank road was constructed, and upon the highway through the lands occupied by the said James Nelson ; and that the defendants did, without the consent of the plank road company, enter upon the same at the places aforesaid, tear up the planks, and grade the land for the purpose of laying down a track thereon, which was the same trespass and injury mentioned in the complaint in this action ; and that the injury done to the road of the plaintiffs by tearing up the plank road was only nominal, and no more than was necessary to enable the defendants to grade their road for the purposes aforesaid.

From the foregoing facts the referee found and reported the following conclusions of law : That at the time of the commencement of this action, the plaintiffs had not any title to or right in the land or premises where the alleged trespasses were committed, and that the plaintiff could not recover; and that a judgment must be entered for the defendants, that they recover their costs against the plaintiffs in this action.

Upon this report a judgment was entered, that the plaintiffs take nothing by their said complaint, and that the same be dismissed; and that the defendants do go thereof without day. And it was further adjudged, that the defendants should recover of the plaintiffs the sum of $63.34, adjudged to the defendants for the costs and expenses of this action, and that they have execution therefor.

Ellicottville &c. Plank Road Co. *v.* Buffalo &c. Rail Road Co.

The appeal was argued in this court by

*Harrington & Lamb,* for the appellants.

*A. G. Rice,* for the respondents.

*By the Court,* MULLETT, J. This was an action brought by the plank road company to recover damages from the rail road company, for a trespass committed by them, by entering upon the plank road, tearing up the plank and grading and depositing materials for the rail road within the bounds of the plank road ; and for an injunction against the rail road company to restrain them from proceeding with the construction of their rail road on and across the plank road, until they had procured the damages to be assessed and paid. Upon the trial, it was proved, and the referee found and reported, that the plank road company was duly incorporated and organized in 1850, and that they went on and built their road in 1851. That prior to the alleged trespasses by the defendants, the plank road company had, in accordance with the statute, procured their road to be inspected and had erected toll gates thereon, and were in the actual use, occupation and enjoyment of the same. This was abundantly sufficient to enable the plaintiffs to maintain an action of trespass for an entry on their plank road, against any persons who did not show a better right to the possession of it in themselves.

The referee, therefore, erred in deciding, that, at the time of the commencement of this action, the plaintiffs had not any title to, or right in the land and premises, where the alleged trespasses were committed, and that the plaintiffs could not recover therein, on that account. But it appeared on the trial before the referee, and also on the argument of the appeal before us, that the defendants claimed, that, as a rail road corporation, they had a right to enter upon the plaintiffs' plank road, and construct their rail road upon and across it, without, or before, causing the damages sustained, or to be sustained by the plank road company, to be assessed or paid ; which is denied by the plain-

tiffs, and this presents the most important question between the parties.

The defendants, as a rail road company were incorporated and organized under the act to authorize the formation of rail road corporations, and to regulate the same, passed April 2d, 1850, commonly called the general rail road act. (*Laws of* 1850, *p.* 211.) By the fifth subdivision of the 28th section of which act, it is provided, that every corporation formed under that act, in addition to certain other specified powers, shall have power to construct their road across, along and upon any stream of water, water-course, street, highway, plank road, turnpike or canal, which the route of its road shall intersect or touch; but that the company shall restore the stream or water-course, street, highway, plank road or turnpike thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness. This provision of the statute was copied from the 5th subdivision of the 19th section of the act of 1848, on the same subject; and that, so far as it relates to crossing streams of water, water-courses, roads and highways, was taken from the 11th section of the act to provide for the construction of a rail road from Auburn to Rochester. (*Sess. Laws of* 1836, *p.* 493.) This statute has not been and cannot be so construed as to authorize a rail road corporation to enter upon and permanently occupy or seriously to injure a turnpike or plank road company who hold and enjoy their franchises and property under an authority of the legislature, equally valid and sacred as that which confers similar rights and privileges on rail road companies. On the contrary, this section is a clear manifestation of a legislative intention to protect the rights of turnpike and plank road corporations against intrusion and violence, by rail road companies. Rail road companies are authorized to intersect or touch them only on condition that they shall not unnecessarily impair their usefulness, to the owners. The inviolability of private property, whether belonging to individuals or private corporations, against the intrusion of rail road corporations, is strongly asserted and clearly illustrated by the supreme court in the cases of *Fletcher* v. *The Auburn and Syra-*

*cuse Rail Road Co.*, (25 *Wend.* 462 ;) *The Trustees of the Presbyterian Society in Waterloo* v. *The Auburn and Rochester Rail Road Company,* (3 *Hill,* 567,) and the case of *The Seneca Road Co.* v. *The Auburn and Rochester Rail Road Co.* (5 *Hill,* 170.) The legislature could not give, and it is not to be presumed that they intended or attempted to give, to this rail road company a right to enter upon the plaintiffs' road and in any way to impair its usefulness or diminish its value, without making or becoming liable to make the plank road company just compensation.

The obstacle heretofore considered as existing in the way of a rail road company acquiring a right to run their rail road across a turnpike or plank road, consisted in the want of power to acquire the privilege desired, except by agreement. The statute authorizing a rail road company to acquire the *title* to real estate wanted for the road, by the special proceedings pointed out by the statute, was not considered applicable to cases where the *title* to the real estate was not to be taken, but only a partial privilege of using it, which did not divest the owners of their title, but only occasioned them some damage, which the rail road company had no power to compel them to surrender. This construction of the statute was in harmony with the legal doctrine of the inviolability of private rights, but was not in accordance with the enterprise and improvements of the age. That a turnpike or plank road, though owned by individuals and used as private property, might be extended through an important section of the state, and through its whole length intercept and cut off the far more important transits of rail roads, or be the occasion for demanding an exorbitant price for crossing them, is a consequence probably not foreseen at the time of the incorporation of these turnpike and plank road companies. It is true, that by the 5th subdivision of the 28th section of the general rail road act, a rail road company is empowered to construct its road across, along or upon any stream of water, water-course, street, highway, plank road, turnpike or canal, which the route of its road shall intersect or touch ; but this statute is construed as granting only the right

which the public had in these streams of water, water-courses, streets, highways, plank roads, turnpikes and canals, and not as attempting to grant any right to violate private property without the consent of the owners ; and this construction is sustained by the doctrine of *noscitur a sociis.* (*Burrill's Law Dict.* part 2, *p.* 756. 3 *Term Rep.* 87. 1 *B. & C.* 644. 13 *East,* 531. *Broom's Legal Maxims,* 294.) The same reluctance in the legislature to violate individual property, or take it, or authorize another to take it, without the consent of the owner, or making compensation to him for it, is manifest in the 24th section of the general rail road act of 1850. The legislature provided for what might, in many cases, be considered an adequate compensation for crossing a turnpike or plank road, but they have not said so, nor compelled the owners to take it as such. By the 18th section of the general rail road act, it is declared that all real estate acquired by any company under and pursuant to the provisions of that act, for the purposes of its incorporation, shall be deemed to be acquired for public use. This is, in substance, but a legislative recognition of the doctrine laid down by the chancellor in the case of *Beekman* v. *The Saratoga and Schenectady Rail Road Co.,* (3 *Paige,* 45,) and practiced upon ever since. This is the principle upon which rail road companies are authorized to take private property for the use of their rail roads, upon paying a compensation ascertained in the manner provided by the statute ; but it cannot authorize them to trespass upon the lands of others which they do not take, and for which they pay no compensation, which it must do if it authorizes them to enter upon the land and appropriate it before ascertaining and paying the compensation. By the 4th section of the act of 1851, in relation to rail road companies, a rail road company which shall occupy or cross a turnpike or plank road, is made liable to pay such turnpike or plank road company all damages which it may sustain by reason of such occupancy or crossing ; the damages to be ascertained and *paid* in the same manner as is provided by law for the assessment and *payment* of damages in cases of taking private property for the use of rail road companies. (*Sess.*

Ellicottville &c. Plank Road Co. *v.* Buffalo &c. Rail Road Co.

*Laws of* 1851, *p.* 21.) The law to authorize the formation of rail road companies, and to regulate the same, passed in 1850, after pointing out the manner in which a rail road company shall proceed to ascertain the damages to be paid for the real estate to be taken for its use, declares that a certified copy of the order to be made on that occasion, shall be recorded at length in the clerk's office of the county in which it is situated; and that, thereupon, and on the *payment or deposit*, by the company, of the sums to be paid for the land &c. the company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation. (*Sec.* 18.) Whatever may have been the claim of rail road companies, before this statute, to a right to enter upon, occupy or cross a plank road without being liable for the damages occasioned by them, since the act of 1851 they have no such right, but can occupy or cross a turnpike or plank road, without the consent of the owners, only upon the condition of first paying the damages sustained by such turnpike or plank road company, ascertained under the statute. This construction of the 4th section of the act of 1851, is in harmony with the spirit of our constitution; with the principles so uniformly asserted and maintained by our judiciary; with the sentiments which have generally governed our legislature; with the just and magnanimous policy which dictated the law, and with the language of the statute to which it was assimilated.

The referee also erred in finding and reporting that the injury done to the road of the plaintiffs by tearing up the planks, was only nominal. He might have found the damages as small as the truth or facts would justify, but the maxim *de minimis non curat lex* is not an applicable answer to an action for violating a clear legal right.

The judgment appealed from must be reversed; the report of the referee set aside, and a new reference to the same or some other referee, ordered.

Judgment reversed.

[Erie General Term, November 14, 1855. *Bowen, Mullett* and *Greene,* Justices.]