THE ST. LOUIS, VANDALIA AND TERRE HAUTE RAILROAD COMPANY

v.

THE TOWN OF SUMMIT.

| | |
|---|---|
| 3 | 155 |
| 54 | 666 |
| 3 | 155 |
| 78 | 376 |
| 3 | 155 |
| 82 | 373 |
| 3 | 155 |
| 89 | 643 |

1. TRESPASS QUARE CLAUSUM—WHEN MAINTAINED—POSSESSION.—In order to maintain the action of trespass *quare clausum*, the plaintiff must be in possession of the premises, except in cases where the land is unoccupied, and there is no adverse possession.

2. HIGHWAYS.—Where the *locus in quo* was a National road, the fee being in the State, the town having only the care and superintendence of it and the duty of keeping it in repair, there is no such possession as will enable the town to maintain this action. No such possessory right in a road exists in a corporation.

3. PRACTICE—PLEADING—DISTINCTION BETWEEN TRESPASS AND CASE. —Although the statute has abolished the technical distinction between these forms of actions, it does not affect the substantial rights of the parties, so as to operate to give any other remedy for acts done than such as before existed; nor does it abrogate the well settled rule that the proofs must correspond with the allegations. If the declaration is trespass *quare clausum fregit*, then there must be a possession in order to support it.

4. DAMAGES—EVIDENCE AS TO.—By its charter, appellant was only bound to restore the highway in such a manner as not to impair its usefulness, and it not appearing how appellant was in any way bound to repair the bridge in question, it was error to admit evidence of how much it would probably cost to repair the bridge. Damages which necessarily result from the

injury complained of, may be shown under the *ad dammum*, but special damages must be specifically set forth in the declaration.

APPEAL from the Circuit Court of Effingham county; the Hon. JOHN H. HALLEY, Judge, presiding.

Messrs. GILMORE & WHITE and Mr. JOHN G. WILLIAMS, for appellant; argued that the town had no such possession as would support the action, and cited Connor v. President, etc. 1 Blackf. 88; Panton Turnpike Co v. Bishop, 11 Vt. 198; City of Champaign v. McMurray, 76 Ill. 353.

As to the measure of damages: Murphy v. City, 23 Wis. 365; Abbott v. Mills et al. 3 Vt. 529.

Mr. WILLIAM B. COOPER and Mr. B. F. KAGAY, for appellee; that the town was chargeable with the duty of keeping the road in repair, cited Troy v. Cheshire R. R. Co. 3 Foster, 103.

The town has such an interest in the road as will authorize a recovery, and if the injury be. permanent, the cost of maintaining a new road may be recovered: Troy v. Cheshire R. R. Co. 3 Foster, 103; 4 Cush. 63; 1 Redfield on Railways, 252.

A statute giving railroads the right to pass over highways, does not preclude parties damaged from recovering therefor: Ellicottville Plank Road Co. v. Buffalo R'y Co. 20 Barb. 644.

The right of eminent domain can only be exercised upon making due compensation: 1 Redfield on Railways, 231.

BAKER, J.    This is an action of trespass *quare clausum fregit*, prosecuted by the appellee against the appellant.    The *locus in quo* is that part of the National or Cumberland road that is located in the township of Summit, in Effingham county.

The case was submitted to a jury at the September term, 1877, of the Effingham Circuit Court, and a verdict was returned into court finding the appellant guilty, and assessing the damages at $2,000.

Motions for a new trial, and in arrest of judgment were overruled, and a judgment was rendered by the court on the verdict of the jury.

The case is brought by appeal to this court, and numerous errors are assigned.

The National road was laid out and constructed by the general government, under an act of Congress passed in 1820, between Wheeling, in West Virginia, and a point on the bank of the Mississippi river, and so much of the lands of the United States as were included in the road were by said act reserved and excepted from sales of the public lands. In 1856 Congress conveyed and transferred to the State of Illinois so much of the Cumberland or National road as lay within the State of Illinois. U. S. Stat. at Large, 1856, p. 7.

Thus the fee in the road was reserved to the United States by the act of 1820, and conveyed to the State by the act of 1856. The State has never divested itself of the title that it received from the general government, and still continues to be the owner in fee of the road.

The State has, however, from time to time made provision for working and keeping in repair this in common with the other public roads and highways. In 1859 the board of supervisors in all counties under township organization were given entire control of all the State roads in their respective counties. Laws of 1859, 194. Afterward, in 1861, this was changed, and the care and superintendence of highways and bridges therein was delegated to the commissioners of highways of the several towns in all counties under township organization. Thus it appears that in Effingham county, it having been under township organization since a time anterior to the passage of either of these acts, the control and care of the National road was at one time committed to the supervisors of the county, and at another time to the commissioners of highways in the several towns, the state retaining the ownership and fee of the road.

By the act of 1861 it was made the duty of the commissioners of highways " to give directions for the repairing of roads and bridges in their respective towns, and to cause the building of bridges when the public interests or necessity require it, to lay out and establish roads, to regulate the roads already laid out and to alter and vacate roads, and to cause the high-

ways and bridges which are or may be erected over streams intersecting highways to be kept in repair." Laws of 1861, 246. The same care and superintendence over highways is committed to such commissioners, and the same duties imposed upon them by the act of April 11, 1873.

The first question that arises upon this record is as to whether the plaintiff below had such possession of the *locus in quo* as would enable it to maintain trespass.

The gist of the action of trespass, *quare clausum fregit*, is the injury to the possession, and the general rule is that without actual possession trespass cannot be supported. The English doctrine is, that as to real property, there is no such constructive possession as will enable the plaintiff to support this action. 1 Chit. Pl. 176, 177, and notes.

With us the rule is relaxed, and when the plaintiff is the owner and the lands are unoccupied, or there is no adverse possession, trespass can be maintained. Dean v. Comstock, 32 Ill. 173; Smith et al. v. Wunderlich et al. 70 Ill. 426.

The title to the National road being in the State, and not in the town of Summit, it is clear that there can be no constructive possession in the town, upon the principle that the possession follows the title when there is no adverse possession. The town, through its commissioner of highways, had merely the care and superintendence of the road, and the duty imposed upon it of keeping it in repair, etc.

The only evidence in the case tending in the least to show actual possession in the plaintiff, was the testimony of several witnesses, who stated that the National road through Summit township had been worked by the road labor in that township, as other highways were worked. We do not understand that this was such possession as would sustain the action of trespass *quare clausum fregit;* in fact, it was a mere performance of the duty imposed by statute upon the town authorities to keep the highways in repair. It has been held that commissioners of sewers could not maintain an action of trespass against commissioners of a harbor for breaking down a dam erected by the former, as such commissioners, across a navigable river, as the authority to be exercised by them on behalf of the public does

not vest in them such a property or possessionary interest as would entitle them to maintain such action, and the proprietors of a navigation, having by statute a mere easement or right to use land for the purposes of the navigation, do not acquire such interest in the soil of a bank adjoining to and formed out of the earth excavated from a new channel, made for the first time under the act, as will enable them to maintain trespass.   1 Chitty Pl. and Notes, 176.

The case of Connor v. The President and Trustees of New Albany, 1 Black. 88, was trespass *quare clausum fregit* and seems to be very much in point.   The court says: "A street in a town is a public highway.   It is a subject of common use, and not of exclusive possession, an incorporeal hereditament, in which all persons possess equal right, the right of passing over it, and is in its nature incapable of being reduced into possession.   But it is a subject of government, and the government of it is, by the act regulating the incorporation of towns, placed in the hands of the corporation.   They have the power to keep it in repair, to remove nuisances, etc.; but this power is no more than a supervisor possesses over a common highway, and is certainly of a very different nature from a possession, either absolute or qualified.   Consequently, no possessory right exists in the corporation, by which the action can be supported."   So in the case at bar, the National road is a public highway, the ownership of which is in the State.   It is for the common use of all.   The public have the right to pass and repass, and it is incapable of being reduced into possession.   So, also, said road is the subject of government, and under the control of the State, and the State has, for the time being, imposed the care and superintendence of it upon certain township officers, and has made it their duty to keep it in repair, etc., and has imposed fines and penalties, to be recovered in the name of the town, for obstructing or encroaching upon the same.   Rev. Stat. 121, §§ 58, 59, 60 and 61.   In this case there is no such possession as will support trespass *quare clausum fregit;* but the remedy in ordinary cases for obstructing or encroaching upon the road would be by suit in the name of the town, for the penalties imposed by the statute.

But it is urged in this suit that an action on the case would lie, and that the distinction between trespass and case was abolished by our statute before the commencement of this suit. Laws 1871-2, 342.

The Supreme Court say, in the case of Blalock v. Randall, 76 Ill. 228: "The statute does away with the technical distinction between the two forms of action, but does not affect the substantial rights and liabilities of parties, so as to operate to give any other remedy for acts done than before existed." We understand the statute to accomplish these objects and these only; to abolish the technical distinction between the two forms of action so that you may join counts in trespass with counts in case, and may call your action trespass or case— it is wholly immaterial which—and may sue out your writ in either form of action, and may then count in either trespass or case, or both, at your option. But your count, if in case, must contain all the elements of a good count in case, or if in trespass, must contain the elements of a count in trespass. The change goes only to the matter of the form of action, and does not change substantial rights and liabilities. Nor do we understand that this statute repeals that old and more than well settled principle, that in all actions the proofs must correspond with the allegations. Where a declaration is filed showing a good cause of action in either trespass or case, it is wholly immaterial whether you call your action trespass or case, but such facts must be alleged as show a legal cause of action in the one form or the other, and the facts that are alleged in the pleading must be supported by the proofs. If the declaration is in trespass *quare clausum fregit*, then there must be a possession in order to support it—either actual, or in case the premises are vacant and unoccupied, a constructive possession that follows ownership and title.

Even if there was in this case such possession as would sustain trespass, it is difficult to see how the plaintiff could recover in such action. The public highways in the State are of general concern, and are fully and completely under the control of the legislature, and in the case of this particular road the fee itself was and is in the State, and the legislature had full power to

make other arrangements in regard to the same, or vacate it or dispose of it as it deemed proper.

It was stipulated in this case that any evidence admissible under a good plea might be admitted under the plea of the general issue. The ninth section of the act amending the act incorporating the appellant provides, among other things, that "Whenever it shall be necessary for the construction of said railroad, to cross any road or highway lying on the route of said road, it shall be lawful for the company to construct their railroad across, upon, or by the side of the same, provided that the said company shall restore the road or highway thus traversed or crossed to its former state, or in a sufficient manner not materially to impair the same in its usefulness." Thus it appears that a license was given to the corporation by the supreme power of the State, and by virtue of that license the company entered upon the National road and constructed its railroad across, upon and by the side of the same, and that by virtue of such license it has continued to operate its railroad across and upon the said road. It is difficult to see why such license is not a full and complete defense to an action of trespass, as appellant of lawful right entered upon and constructed its said road upon said highway.

The attention of the court is called by counsel for appellee to the case of Ellicottville, etc., Plank Road Co. v. Buffalo, etc. R. R. Co. 20 Barb. 644. That was an action prosecuted by the plank road company against the railroad company for a trespass committed by entering upon the plank road and for tearing up the plank and grading, etc. The plank road company was a private corporation, duly organized under the laws of the State, and was "in the actual use, occupation and enjoyment of the plank road, toll-gates," etc. The liability in that case is distinctly put upon the ground of the inviolability of private property, "whether belonging to individuals or private corporations." The court say: "The legislature could not give to this railroad company a right to enter upon the plaintiff's road, and in any way to impair its usefulness or diminish its value, without making or becoming liable to make the plank road company just compensation. This statute is construed as

granting only the right which the public had in these streams of water, water-courses, streets, highways, plank roads, turn-pikes and canals, and not as attempting to grant any right to violate private property without the consent of the owners."

The distinctions between that case and the case at bar are obvious; in that case the plank road was the property of and in the actual use, possession and occupancy of the plaintiff; in this case the plaintiff had no possession and had only the care and superintendence of the highway; in that case the plaintiff was a private corporation with vested rights of property, and in this case the plaintiff is merely one of the political subdivisions of the State, with a mere duty imposed upon it by the State of keeping the highway in repair, and that care, superintendence and duty liable to be taken away and devolved upon others at the legislative will.

Our attention is also called to the case of The Town of Troy v. Cheshire Railroad Company, 3 Foster, p. 83. The declaration is in case, and alleges that there was a public highway in Troy leading from Troy toward Keene, and which the town was liable to repair, and that there was upon the highway and forming a part of it, a valuable stone bridge, in good repair and suitable for the accommodation of the public; that the defendant had built a railroad partly upon and over said highway, and did in constructing their railroad cause obstruction and injury to the said highway and to said bridge, by demolishing and destroying the bridge and converting to their own use the material thereof and by erecting upon the site of the bridge a railroad bridge impassable by the public travel, and by occupying with the rails, embankments and excavations of the railroad a part of the highway, etc., and by placing upon said highway a large quantity of stones, and by creating upon the traveled part of the highway a fence, etc., by means of which the highway was narrowed and rendered unsafe, etc.

It will be seen that the case above referred to differs materially from the case at bar as presented by the pleadings; that being an action on the case, alleging no possession by the plaintiff or trespass by the defendant, but alleging the injury complained of according to the real facts of the case. Aside from

the question of damages, which we will hereafter refer to, the only point decided in the case is that towns that are required by law to construct and keep in repair highways and bridges within their boundaries, have a qualified interest in the roadways and bridges that they have erected, and may maintain an action upon the case for the destruction or obstruction of the road, or the conversion of the materials.    The case of Harrison v. Parker, 6 East. 154, is cited several times in the opinion of the court.    In that case Harrison, under a grant of authority from Sir G. Warren, built a bridge on the land of Warren for public use, and covenanted to keep it in repair and not to demand toll.    He sued the defendants in trespass, alleging in the first count of the declaration that these defendants broke down and damaged plaintiff's bridge, etc.; and the second and third counts were for similar trespasses.    The fourth count was on the *asportavit* for taking and carrying away the goods and chattels of the plaintiff and converting them, etc.    At the assizes a verdict was found for the plaintiff.    Afterward in the Court of King's Bench it was held that the action might be maintained by the plaintiff on the fourth count for the *asportavit*, as there was a qualified right of property subsisting in the plaintiff after the dedication of the bridge to the public, and that upon severance of the materials of the bridge they returned to him again as his absolute property, so as to enable him to maintain a possessory action for the materials subsisting in the shape of several chattels.    Lord Ellenborough, C. J., in delivering his opinion, says:    " If it were necessary to decide whether trespass were maintainable by the plaintiff for pulling down the bridge, it might be proper to consider whether any property in the soil had passed to him under the grant, but on the fourth count it is not necessary to decide that question."

In fact, we have been unable to find any case where it has been held that a party with no property in the soil, and not in actual possession or occupancy of a road or bridge, could maintain trespass *quare clausum fregit*, merely upon the ground that such party was charged with the duty of keeping it in repair.    We feel clear that the proper common law remedy for an injury would be in case.

Even were the declaration such as to permit a recovery, the present judgment would have to be set aside and the cause remanded for errors, in admitting improper testimony against the objections of the appellant, and in refusing proper and giving improper instructions to the jury, and for the further reason that the damages assessed by the jury, are altogether excessive and not justified by the evidence in the case.

The facts of the case, as shown by the evidence, are about as follows: The National road was laid off by the general government eighty feet wide, and was graded for the width of thirty feet. The town of Summit has never spent any money in repairing the road, but ordinary road labor has been done upon that part of the road within the town. The appellant constructed its railroad upon the National road for about 800 feet through Ewington, on the west bank of the Little Wabash river; through Ewington the railroad cut is between twelve and eighteen feet deep, and across this cut the railroad company built a bridge for the wagon road; about thirty feet on the north side of the National road was left by the railroad for the use of the public, except for a short distance at or near the bridge. For a very short distance the railroad occupies all or nearly all of the National road. But to obviate the difficulty the railroad condemned or attempted to condemn, and graded a strip of ground north of and parallel with the old road for a road for the accommodation of the public, and to furnish a way from the east edge of Ewington; and also opened a road south of the railroad that leads back to the National road west of the bridge across the railroad cut, these two pieces of road, one on the north and the other on the south side of the railroad, being connected by said bridge.

It appears from the evidence that at the time that the railroad was constructed there was an old bridge across the Little Wabash river on the National road; that the railroad did not touch the National road at either end of the river bridge; that the center line of the railroad was twenty feet south of the line of the National road; that it was about one hundred feet from the railroad to the old bridge, and that the whole width of the public road was open there. This old bridge, from innate

defects and its own weight, fell down about one year after the railroad was built, and there is nothing whatever in the evidence showing or tending to show that the railroad company had anything whatever to do, directly or indirectly, with the destruction of this bridge. It is, however, in evidence that this part of the road was considered somewhat dangerous by some on account of the liability of horses to get frightened at the cars.

Upon the trial, against appellant's objections, the court permitted appellee to ask its witnesses "what it would take to place the road in its old condition, including the bridge, grading and everything," and questions of similar import, but of slightly variant phraseology, and permitted the witnesses to answer, they stating various sums, ranging from $1,000 to $5,000. Moreover, the court refused to give the following instruction, which was asked by the appellant: "In determining plaintiff's damages in this case the jury are not to take into consideration the value of the bridge which formerly crossed the Wabash river in Summit township, or what it would take at the time defendant's road was constructed to put said bridge in good repair."

We are wholly unable to perceive how it became the duty of appellant to repair said bridge, it being upon a portion of the National road that was not even touched by its railroad, or upon what theory of law or justice it was liable to pay the value of a bridge for the destruction of which it was in no way accountable, and which it does not appear to have meddled with in the least. We are satisfied that the verdict of the jury for $2,000 damages was predicated to a very considerable extent upon the opinions of witnesses based upon the supposed value of this bridge. There was error in permitting questions of the character above indicated to be asked and answered, and also in refusing to give the instruction mentioned.

Again, witnesses were permitted, against the objection of appellant, to make estimates of the cost of restoring the National road to the same condition, at the same grade and in the same place as the old one. There was error in this. The appellant had a license from the State to build its railroad across and

upon the highway, and to maintain it there. The occupation of the appellant was necessarily permanent in its character, and surely it never was contemplated by the legislature, when it required the appellant to restore the highway in a sufficient manner not to materially impair the same in its usefulness, that the appellant would fill up cuts twelve or eighteen feet deep, and thereby cover up its road-bed and tracks to that depth. Nor is it to be supposed that appellee intends to perform any such labor.

We have heretofore seen that, under the statutes of the State, it is the duty of the town to keep so much of this highway as lies within its limits in repair. For this purpose it is authorized to apply the road labor of the township and to assess and collect a road tax. It is also authorized to alter or widen the road, and to have the damages of the owners of the land, if not released or agreed upon, assessed by a jury, and such damages are to be paid by the town, and the town, out of the funds raised for road and bridge purposes, and by availing itself of the road labor of the township, is required to make and pay the expenses of grading and opening the road thus altered or widened. Out of this liability grows the right, if any such right it has, of the town to maintain an action for damages, upon a count properly framed, against the appellant. The damages that it would be entitled to recover, if any, would be measured by its liability, and would be altogether compensatory in their character. In this case, while the railroad company occupies a portion of the public highway under license from the State, yet it was required to restore the highway in a sufficient manner not materially to impair its usefulness. If it has already done this, then it has already performed all that was required of it, and it is not bound to respond in damages to the town. If it has not done so, then the town will have to perform the duty that appellant should have performed, so that the public may safely pass and repass upon the highway, and for any expenses that the town would necessarily incur in procuring right of way, or in opening or grading the new portion of the road so as to make it equally safe and convenient to the old portion, or for any extra expense of keeping in repair the road as remodeled, over and

above the expense of keeping in repair the old road, and for any expense of removing obstructions upon the portion of the old road retained within the new highway, the town would perhaps be entitled to recover as compensation. In this case, the injury and nuisance is necessarily of a permanent character and will continue without change. The continuance of the state of facts produced by the acts of appellant will necessarily follow, as it must be presumed that appellant will continue to occupy such portion of the highway as its road is built upon, and it is a permanent diversion of that property to a new use. The ingredients above mentioned, growing out of the acts of appellant and the liability of appellee, would probably constitute the measure of damages, and if so may be recovered, not as prospective damages, but as compensation for the injury sustained. In this connection, see The Town of Troy v. Cheshire R. R. Co. 3 Foster, 83.

Those damages which necessarily result from the injury complained of may be shown under the *ad damnum*, but where the damages, though the natural consequences of the act complained of are not the necessary result of it, they are termed special damages, which the law does not imply, and they must therefore be specified in the declaration or the plaintiff will not be permitted to give evidence of them at the trial. This principle would probably apply to some of the elements of damages above indicated, such as expense of right of way, which, even if not already procured by appellant, might be donated or released, and it might be necessary as to such damages to specify in the declaration and moreover show either actual payment or legal liability to pay on the part of appellee.

The judgment of the court below is reversed and the cause remanded..

Reversed and remanded.