No. 11,616.

THE INDIANAPOLIS AND CUMBERLAND GRAVEL ROAD COMPANY *v.* THE BELT RAILWAY COMPANY.

GRAVEL ROAD.—*Crossing by Railroad.— Compensation.*—Where a corporation, by an act of 1849, was granted a public highway for the purpose of constructing and maintaining thereon a plank road, but subsequently forfeited its rights in such highway, railroad companies which, by the same act, were given power to lay their tracks across the plank road without compensation, upon such forfeiture, ceased to have any rights under that act, and can assert none as against a gravel road which is afterwards maintained on the same highway by another corporation.

SAME.—*Right of Railroad to Cross Highway Without Compensation.*—Section 3903, R. S. 1881, conferring upon railroad companies the power to cross

highways without compensation, has reference to ordinary highways, controlled by the public authorities and maintained by taxation, and does not embrace a highway which is used for gravel road purposes by a private corporation under a grant from the board of county commissioners.

SAME.—*Private Rights in Highway.—Taking by Railroad Without Compensation.—Damages.—Maxim De Minimis non Curat Lex.*—A gravel road company has property rights in a highway used by it, under a grant, for gravel road purposes, and where a railroad company lays its track across such road without the consent of the gravel road company, and without proceedings to condemn and the payment or tender of damages, the latter corporation has a right of action, and is entitled to at least nominal damages, and in such a case the maxim *de minimis non curat lex* will not apply.

From the Marion Superior Court.

*A. C. Harris, W. H. Calkins* and *H. W. Talbott*, for appellant.

*A. L. Roache, E. H. Lamme, S. Claypool* and *W. A. Ketcham*, for appellee.

ZOLLARS, J.—At the request of the parties, the jury returned a special verdict. We take from appellee's brief the following summary of the facts found and set out in the special verdict, viz. :

" The road now owned by the appellant was originally constructed by the United States government, and by it granted to the State of Indiana.

" The appellant corporation, in 1864, was organized under the general plank and gravel road law of the State.

" The said road, then belonging to the State, was granted to appellant by the board of commissioners of Marion county, and it has ever since occupied, possessed, and used it as a toll gravel road.

" The appellee corporation was organized under the general railroad law of Indiana, in 1876, and was constructed immediately, building its track across the gravel road without previously obtaining the right to cross, either by license, purchase or condemnation.

The Indianapolis and Cumberland Gravel Road Co. *v.* The Belt R'y Co.

"The Belt Road obtained a right of way from the owners of the fee on both sides of the gravel road, on one side by purchase, and on the other by condemnation.

"The said railroad crossed at right angles; was built in a proper and workmanlike manner, 'so as to afford security for life and property.' Immediately on its construction, the company restored the highway in a sufficient manner not to have unnecessarily impaired its usefulness, or injured its franchises, and so as not to interfere with the use of the same.

"From 1877 to 1882 the tolls had diminished each year. The diminution was not in any way occasioned by the crossing of the Belt Railroad, but by other causes unconnected with the crossing, which are fully set forth."

In addition to the above, so taken from appellee's brief, the jury also found, and incorporated into their special verdict, the further facts, that in 1849 the Legislature of the State incorporated the Central Plank Road Company, and gave to it the right to occupy and use, as a gravel road, that portion of the National Road between Indianapolis and the Hancock county line; that prior to 1864, by a proceeding on information in the nature of *quo warranto*, all of the rights and franchises of the Central Plank Road Company, in relation to said portion of the National Road, were forfeited.

The special verdict closed as follows: " If, upon the foregoing facts, the law is with the defendant, we, the jury, find for the defendant.; if, upon the foregoing facts, the law is with the plaintiff (appellant here), we, the jury, find for the plaintiff, and assess its damages at the sum of ———."

After the return of the special verdict, before the jury had been discharged, and while they were yet in the jury-box, appellant, by counsel, requested the court to instruct the jury that they must, in any event, assess nominal damages for the plaintiff. That the court refused, accepted the verdict over appellant's objection, and over its objection, and motion for a new trial, rendered judgment in favor of appellee for costs,

taxed, as shown by the record, at two hundred and six dollars.

It is charged in appellant's complaint, amongst other things, that without its consent, and unlawfully, the railroad company constructed its road across the gravel road ; that by reason of such construction and the constant moving of trains at a high rate of speed, appellant has suffered loss, in the diminution of tolls, and that the value of its rights and franchises has been greatly lessened and impaired, to its damage, etc.

It is contended by appellant's counsel, that the facts found by the jury show that its rights have been unlawfully invaded by the railroad company, and that, therefore, although no actual damages were found by the jury, nor facts upon which such damages might be predicated, it is entitled to nominal damages; and that, having such right, the court below should have instructed the jury to fill out their verdict by inserting damages, nominal in amount ; and still further, that in refusing to so instruct the jury, and in rendering judgment for appellee, over appellant's objection and motion for a new trial, the court below committed such error as requires a reversal of the judgment.

The first question for consideration is, did the railroad company, by laying its track across appellant's gravel road, invade any of its rights under the Constitution and laws of the State?

As found by the jury, the way upon which the gravel road was constructed, was originally a National road. That road was ceded to the State by the general government. Subsequent to that, the State, through its Legislature, by a special act, incorporated the Central Plank Road Company, and gave to it certain powers and privileges. The 17th section of that act was as follows:

"Section 17. This corporation is hereby empowered to take possession of, occupy, and use, for the purpose of constructing a plank road thereon, all that portion of road known

as the 'National Road,' * * * lying between the eastern line of the county of Hancock and the western line of the county of Putnam; and all the rights and privileges heretofore belonging to the United States in regard to such part of said National Road, and which have been surrendered to the State of Indiana, be and the same are hereby transferred to and vested in the said company for the purposes contemplated in this act: *Provided*, That the president, directors, and company of the Terre Haute & Richmond Railroad Company, or any other railroad, shall have the right and power of locating and constructing said railroad across said plank road and of recrossing the same at such points as shall be convenient or necessary, doing no injury to the same more than is absolutely necessary." Local Laws 1849, p. 199.

Under that statute, there is no question that the Terre Haute and Richmond Railroad Company, or any other railroad company existing under the laws of the State, might. have crossed the road of the Central Plank Road Company without compensation.

The act creating it conferred upon the plank road company whatever rights it had. Whatever rights it thus acquired. in or to the National Road, it took subject to the rights of the railroad company named, or any other railroad company, to lay its track across the road.

The right to use the portion of the National Road was a special grant to the particular plank road company, and to none other. The proviso, in the section of the act above set out, had reference to the special grant to the Central Plank Road Company, and operated as a limitation upon the rights granted. So far as that company was concerned, the railroad companies were given the right to cross the road.

The right to the railroad company was also given with reference to the Central Plank Road Company alone. The act settled the rights of the plank road company and the railroad companies with reference to each other, and no further. The right thus conferred upon the railroad companies was not a.

general grant of right and authority, to be exercised as against whatever rights might thereafter, in a proper way, be conferred upon a subsequent and different corporation to occupy and use the National Road. When the Central Plank Road Company ceased to have any rights in or to the National Road by virtue of the act of 1849, the railroad companies also lost their right under that act to cross the road. If, therefore, appellee had or has any right to cross appellant's gravel road without compensation, it is not by virtue of the special act of 1849, but by virtue of other statutes.

In 1858 a judgment was rendered forfeiting all of the rights and franchises of the Central Plank Road Company in and to that portion of the National Road now occupied by appellant, and that portion was declared to be a public highway. *Central Plank Road Co.* v. *Hannaman*, 22 Ind. 484.

In 1864 appellant was incorporated as a gravel road company under the general laws of the State which were then in force. R. S. 1881, section 3624, *et seq.*

One section of the law was and is as follows : " The directors of said company shall proceed to locate and lay out said road, and may locate the same over and upon any State. or county road, or other public highway, with the consent of the board of county commissioners of the county, entered of record and granted upon such conditions as to such board may seem just and reasonable ; and thereupon such State or county road or other public highway, or such portions thereof as may be so occupied or appropriated by said company, shall be and become the property of said company for the purpose of making and maintaining said road and the toll-gates and toll-houses thereon. The board of county commissioners of the several counties of this State are hereby authorized to give their consent to the appropriation and occupation of any such State or county road or other public highway over and upon which any company may locate any such road." R. S. 1881, section 3628.

In pursuance of that statute, the board of commissioners

of Marion county, on the 17th day of October, 1864, made an order finding that the National Road, formerly known as the "Central Plank Road," or so much thereof as lies between the eastern boundary of Indianapolis and the Hancock county line, was, at that time, a public highway, and consenting that appellant might proceed to locate, and construct and maintain its gravel road over and upon said highway, in accordance with the requirements of the statute in such case made and provided.

The act under which appellant is incorporated, and under which the above action of the county board is authorized, provides, as we have seen, that a highway, occupied by a gravel road company in pursuance of such order, "shall be and become the property of said company for the purpose of making and maintaining said road and the toll-gates," etc.

The gravel road company, by the order of the county board, acquires an interest in the highway. The easement, which was before owned by the public, is thus transferred to the gravel road company. And after the gravel road is constructed, the gravel road company has an interest and property in the gravel road that may be sold on execution. *Danville, etc., G. R. Co.* v. *Campbell*, 87 Ind. 57 ; *Carter* v. *Clark*, 89 Ind. 238 ; R. S. 1881, sections 3646, 3654, 3659 ; *Indianapolis, etc., G. R. Co.* v. *State, ex rel.*, 105 Ind. 37 ; *Rowe* v. *Major*, 92 Ind. 206.

The stock of such gravel road companies may be consolidated. R. S. 1881, section 3662 ; *Crawfordsville, etc., T. P. Co.* v. *Fletcher*, 104 Ind. 97. ·

Such companies may, doubtless, sell their interests in such gravel roads. Sections 3665, 3678 ; *Rowe* v. *Major, supra.* And so the gravel road company has a private property in such road that is taxable. R. S. 1881, sections 6296, 6357. That private property can not be taken by any one without just compensation, nor, except in case of the State, without such compensation first assessed and tendered. Art. 1, section 21, Constitution of Indiana.

The Indianapolis and Cumberland Gravel Road Co. v. The Belt R'y Co.

The building of a railroad across a gravel road would be a taking within the meaning of the Constitution. It has been held that any permanent encumbrance on property, or exclusion of the owner from its enjoyment, is a taking within the meaning of the Constitution; that a partial destruction or diminution of value is a taking; that a deposit of stone or rubbish upon land is such a taking as requires compensation; that it does not signify that the improvements are made with skill and care; that throwing an arch over property or tunnelling it, is such a permanent use of land as constitutes a taking; that the injury to the owner's enjoyment is the basis of the claim; that although the damages be nominal, yet, if the act violates the rights of any one, and the violation is of such a nature that if it be continued for a sufficient period of time, the wrong-doer may acquire a title by adverse possession or presumption of grant, the person whose rights are violated may maintain an action therefor without proof of any other actual damages.

And so it has been said: "The right to use property is the valuable feature of property. Property is the right to possess, use, enjoy, and dispose of a thing. The right of using necessarily includes the right and power of excluding others from using the same property. The Constitution is intended to protect all the essential elements of ownership which make property valuable, and when an easement of any sort is taken in property, a certain portion of the property is taken, and that taking requires compensation. Easements which owners have over the lands of others are property, and a taking or interference with the same is a damage for which compensation should be paid." Mills Eminent Domain, section 31. *Wabash and Erie Canal* v. *Spears*, 16 Ind. 441; *East Penn. R. R. Co.* v. *Schollenberger*, 54 Pa. St. 144; *Lund* v. *New Bedford*, 121 Mass. 286; *Eaton* v. *Boston, etc., R. R.*, 51 N. H. 504 (12 Am. R. 147); *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166.

And so it has been held, that a railroad company is enti-

tled to damages occasioned by the crossing of its track by a highway. *Old Colony, etc., R. R. Co.* v. *County of Plymouth*, 14 Gray, 155. See, also, *Crossley* v. *O'Brien*, 24 Ind. 325.

A railroad company has not the same right to lay its track upon and across the road of a gravel road company, that travellers have to cross such road on foot or with vehicles. The railroad track, when thus laid, becomes a permanent thing, and, so far as it may obstruct, a permanent obstruction. The gravel road company has a property in the gravel upon the road-bed, and in the easement which it acquires by virtue of the law and the order by the county board. The railroad company can not take either of these, nor encroach upon the rights of the gravel road company therein against its consent, or without the payment of proper compensation, under the legal method of condemnation.

It is contended by appellee's counsel, that at the time appellant acquired its right to use the highway as a gravel road, the statute in force gave to railroad companies the right to cross highways without the payment of compensation, and that appellant in accepting the grant from the county board, " *ex necessitate,*" accepted it subject to the right of railroad companies to cross the road with their tracks.

The general railroad law then in force provided, as it does now, that any railroad company organized under that law shall possess the power " To construct its road upon or across any * * * road, highway, railroad, * * * so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the * * * road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises." R. S. 1881, section 3903.

That statute confers upon railroad companies the power to cross highways, and to do so without the payment of compensation, so far as the public is concerned. And while a highway, used for gravel road purposes by a gravel road

company under grant from the county board, is still, in some sense, a highway, we think that it is not a highway in the sense in which that term is used in the above statute. That statute has reference to ordinary public highways, managed and controlled by the public authorities, and kept in repair and maintained by taxation upon the people.

The Legislature, acting in behalf of the people, intended to grant, and by the act did grant, to railroad companies the right to cross public highways without responsibility to the public. It was not the purpose to grant to railroad companies power to violate private rights. That the Legislature could not do.

As we have seen, after the grant by the county board and the construction of the gravel road, appellant became invested with private rights in and to the road. The road is no longer managed and controlled by the public authorities, nor is it maintained by taxation upon the people. It is managed exclusively by the gravel road company, and is maintained by it out of its revenues. The road is no longer a public highway in the sense of the above statute, but is a gravel road, in and to which appellant has property rights.

While the law gave, and still gives, to railroad companies the right to cross public highways without compensation and without responsibility to the public, it also gave, and still gives, to the boards of commissioners of the several counties authority to grant special privileges to gravel road companies in and to highways, and thus change their character from that of public highways purely, to ways in and to which the gravel road companies have private property rights. Such rights appellant has in and to the gravel road in question. And having such rights, the road is no longer a public highway in the sense of the statute authorizing railroad companies to lay their tracks across highways without compensation.

It results, that appellee had no right to lay and maintain its track across appellant's road without first getting its con-

sent, or condemning a right of way across the road, in the mode provided by the statute.

Our conclusion here is fully sustained by the rulings in New York. The railroad statute here involved is the same, in substance, as the statute of New York, upon which the rulings were there made; if, indeed, our statute was not copied from that of New York.

Here we may say, that it can make no difference whether the right of the gravel road company to use a public highway is conferred by statute, or by the board of county commissioners acting under and in pursuance of statutory authority.

Nor can it make any difference whether such right of the gravel road company was conferred before the passage of the railroad act, or whether it was conferred in pursuance of law after the passage of the railroad act. In either case, the gravel road company acquires private rights in and to the gravel road, which can not be invaded under the railroad act. That act, properly construed, was not intended to authorize such invasion.

The holding in the case of *Seneca Road Co.* v. *Auburn, etc., R. R. Co.*, 5 Hill, 170, is summed up in the syllabus to the case, in substance, as follows: An incorporated company, by constructing a turnpike on the line of a road belonging to the State, under a charter conferring the usual privilege of taking toll, etc., thereby acquires a property in the turnpike. Accordingly, where a railroad company built its road across such turnpike without making or tendering any compensation, although its charter declared it lawful for it, when necessary, to lay its road across any highway, it was liable to the turnpike company in damages. The maxim *de minimis non curat lex* is never applied to the positive wrongful invasion of one's property. To warrant an action in such case, the degree of damage is wholly immaterial. It is enough that there is a plain violation of right and a possibility of damage.

In that case COWEN, J., said : " The way became the company's own, and no person, without their consent, could lawfully use, encumber or otherwise interfere with it in any way, except as travellers on the terms fixed by the act of incorporation. The plaintiffs acquired a franchise. To say that the defendants might lay and occupy a railroad across the turnpike, would be to recognize a principle by which, if followed out, the plaintiffs' road may be rendered entirely useless, and their franchise destroyed." See *Fletcher* v. *Auburn, etc., R. R. Co.,* 25 Wend. 462.

In the case of *Trustees, etc.,* v. *Auburn, etc., R. R. Co.,* 3 Hill, 567, NELSON, C. J., in speaking of the proper construction to be given to the railroad act, in relation to crossing highways, said : " We apprehend the provision, upon a true construction, applies only to the public property and interest in the highway." See, also, to the same effect, *Fletcher* v. *Auburn, etc., R. R. Co., supra; Ellicottville, etc., P. R. Co.* v. *Buffalo, etc., R. R. Co.,* 20 Barb. 644.

In the case last cited, the right of the plank road company, whose road was constructed on a highway, as against the railroad company which had laid its track across the plank road, was involved. The court said : " The Legislature could not give, and it is not to be presumed that they intended or attempted to give, to this railroad company a right to enter upon the plaintiffs' road and in any way to impair its usefulness or diminish its value, without making or becoming liable to make the plank road just compensation. * * * The referee also erred in finding and reporting that the injury done to the road of the plaintiffs by tearing up the planks, was only nominal. He might have found the damages as small as the truth or facts would justify, but the maxim *de minimis non curat lex* is not an applicable answer to an action for violating a clear legal right."

Our conclusion upon the case before us is, that appellant has property rights in and to the gravel road, and that ap-

The Indianapolis and Cumberland Gravel Road Co. *v.* The Belt R'y Co.

pellee unlawfully invaded those rights by laying its track across that road, without appellant's consent, and without proper proceedings to condemn, and the payment or tender of damages.

The court below, therefore, erred in rendering judgment in favor of appellee for costs. The jury should have been directed, as asked by appellant, to fill the blank in the special verdict with damages in favor of appellant, nominal in amount. Doubtless the court might have done so without returning the verdict to the jury. In any event, upon the facts found, the judgment should have been in favor of appellant for nominal damages.

This court has frequently applied the maxim *de minimis non curat lex*, and held that a new trial will not be granted, nor a judgment reversed, in order that nominal damages may be assessed. *Jennings* v. *Loring*, 5 Ind. 250; *Tate* v. *Booe*, 9 Ind. 13; *Patton* v. *Hamilton*, 12 Ind. 256; *State, ex rel.,* v. *Shackleford*, 15 Ind. 376; *Black* v. *Coan*, 48 Ind. 385; *State, ex rel.,* v. *Cloud*, 94 Ind. 174.

These cases involved matters of contract only, where the only things to be gained by new trials or the reversal of the judgments were nominal damages and costs, the amounts of which do not appear.

Here the case is entirely different. The injury to appellant is in its character permanent, and will be permanent, unless its rights are settled and established. Appellee is wrongfully maintaining the track of its railroad across appellant's gravel road. By the lapse of sufficient time that maintenance may ripen into a right. For the reasons stated this is not a case for the application of the maxim *de minimis non curat lex*. See *Ross* v. *Thompson*, 78 Ind. 90, and the New York cases above cited.

The judgment is reversed, with instructions to the court below to vacate the judgment against appellant, and render

judgment in its favor for nominal damages.  See *Dawson* v.. *Shirk*, 102 Ind. 184.

ELLIOTT, C. J., did not participate in the decision of this cause.

