No. 12,382.

THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY *v.* EBERLE.

HIGHWAY.—*Obstruction.*—*Railroad Embankment.*—*Abutting Owner.*—*Access to Property.*—*Damages.*—The owner of an abutting lot, whose title extends to the middle of a highway forty feet wide, can not maintain an action for damages for an unlawful obstruction on the opposite side, caused by the construction thereon of an embankment, eleven feet in width, by a railroad company for a road-bed, the only effect of which is to render access to his property more difficult and inconvenient, and to force the travel on the highway nearer to his lot, as the injury is the same in kind as that suffered by the community in general, differing only in degree.

SAME.—*When Abutting Owner May Sue for Obstruction.*—Where the owner of a lot is entitled to exercise a right which he possesses in common with the public, and the exercise of which is necessary to the enjoyment of his property in the usual manner, it must appear, to warrant a recovery, that the obstruction complained of presents a physical disturbance of such right, so as to impair its use in the manner previously enjoyed, and causes peculiar damage to the property to which the right is appendant.

The Indiana, Bloomington and Western Railway Company v. Eberle.

SAME. — *Measure of Damages.* — *Permanent Injury.* — *Action in Trespass.* — Where the character of the injury is permanent, and the complaint for damages recognizes the right of the defendant to continue in the use of the property wrongfully appropriated and to acquire title as a result of the suit, damages for the permanent depreciation of the property may be recovered; but where the action is in trespass, and denies the defendant's right to continue the obstruction or to acquire title, only such damages as had accrued at the time the action was commenced are recoverable.

From the Marion Superior Court.

*C. W. Fairbanks, B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellant.

*R. Hill* and *R. N. Lamb,* for appellee.

MITCHELL, J.—Eberle sued the railway company for an alleged injury suffered by him, as the owner of a lot, upon which he had his homestead, in one of the additions to the city of Indianapolis. He complains that the company has erected an embankment in front of his lot, and that it occupies a part of the highway with its track, over which its engines and cars are operated, and that such occupation renders access to his property difficult and inconvenient, and otherwise damages and depreciates its value. He prayed for damages, and for an injunction.

The special findings of the court present a case like this: The plaintiff was the owner of a lot forty-six feet in width, fronting on a highway forty feet wide. This highway had been by due authority converted into a gravel road, and was known as the " Pendleton Pike." The plaintiff's lot abutted upon the southeast side of the highway, and was occupied by him as a residence prior to the grievances complained of. Before the occupation of the highway by the railroad, the surface water falling and running thereon was conducted along the northwest side thereof, by means suitable for that purpose, so that it was prevented from flowing upon the plaintiff's lot. In the spring of 1882, the railway company, without making or tendering any compensation to the plain—

tiff, entered upon the northwest side of the highway, oppo-site the plaintiff's lot, and erected an embankment of earth, eleven feet wide and five and one-half feet in height, along the entire front of the lot.   The embankment so erected was a continuation or widening of an existing embankment there-tofore made by the Cleveland, Columbus, Cincinnati & In-dianapolis Railroad Company, whose track runs parallel with that of the Indiana, Bloomington & Western Railroad for the distance of half a mile or more.   Upon the embankment so widened and constructed the defendant has laid its track, over which it has ever since operated its engines and cars. By means of the defendant's roadway so constructed, the highway is permanently obstructed to the extent of eleven feet in width, along the northwest side thereof, thereby reduc-ing it to the width of twenty-nine feet along the front of plaintiff's lot, thus forcing the travel over the highway to-ward the plaintiff's premises, and rendering ingress and egress to and from the same more difficult and inconvenient.   The construction of the embankment has also destroyed the means theretofore provided for carrying off the water along the north-west side of the highway, thereby causing the surface water to be thrown upon the plaintiff's lot, and into his cellar. The occupation of the highway in the manner described, and the reduction of its width from forty to twenty-nine feet, have, as the court finds, damaged and depreciated the value of the plaintiff's property to the amount of five hundred dollars. He has sustained additional damages, amounting to ten dol-lars, on account of the flooding of his cellar and premises.

Upon the foregoing facts the court's conclusions of law were, that the occupation of the street by the railroad was wrongful and unlawful, and that the plaintiff was entitled to recover " five hundred dollars in damages for the perma-nent injury to the real estate, by reason of the defendant's entering upon and appropriating eleven feet off the north-west side of the highway," and by reason of the construction of the embankment and railroad track, and running engines

and cars thereon, and the consequent narrowing of the street to twenty-nine feet.   As a further conclusion, the court stated that the plaintiff was entitled to recover the additional sum of ten dollars, for damages sustained up to the commencement of the suit, on account of the flooding of his premises with surface water.

The questions for decision, although presented by intermediate rulings, may be conveniently considered and disposed of upon the exceptions to the conclusions of law.   Having found that the plaintiff's lot abuts upon the southeast, and that the unlawful obstruction complained of is the occupation of eleven feet in width along the northwest side of the highway, since the line of the plaintiff's lot did not in any event presumably extend beyond the center of the highway, it necessarily follows that the amount allowed by the court for damages sustained on account of the permanent injury to the plaintiff's real estate, must have been for some other injury than the taking and appropriating of, or imposing any additional burden upon, the plaintiff's land.

The damages awarded must have been predicated upon the special injury resulting from the fact that ingress and egress to and from his premises were rendered more difficult and inconvenient, and that travel was diverted along that side of the highway, adjacent to plaintiff's lot.   Two questions are thus presented for consideration:  1. Can the abutting lot-owner, whose title extends at most to the middle of a highway forty feet in width, maintain an action for damages for an unlawful obstruction, eleven feet in width, on the opposite side, the only effect of which is to render access to his property more difficult and inconvenient, and to force the travel nearer to his lot?  2. If the action may be maintained, is the measure of damages the injury sustained up to the commencement of the suit, or may it include the permanent depreciation in the value of the property?

Whatever may be the rule of decision elsewhere, nothing

is better settled in this State, than that the owners of lots abutting on a street may have a peculiar and distinct interest in the easement in the street in front of their lots.   This interest includes the right to have the street kept open and free from any obstruction which prevents or materially interferes with the ordinary means of ingress to and egress from the lots. It is distinguished from the interest of the general public, in that it becomes a right appendant, and legally adhering to the contiguous grounds and the improvements thereon as the owner may have adapted them to the street.   To the extent that the street is a necessary and convenient means of access to the lot, it is as much a valuable property right as the lot itself.   It can not, therefore, be perverted from the uses to which it was originally dedicated, nor devoted to uses inconsistent with street purposes, without the abutting lot-owner's consent, until due compensation be first made according to law for any injury and damage which may directly result from such interference; nor can the street be invaded so as to inflict special and peculiar damage or injury upon the adjacent lot-owner's property, without rendering the wrongdoer liable for such damage.   *Town of Rensselaer* v. *Leopold*, 106 Ind. 29, 31, and cases cited ; *Story* v. *Elevated R. R. Co.*, 90 N. Y. 122 ; *Mahady* v. *Bushwick Railroad Co.*, 91 N. Y. 148 ; *Uline* v. *New York Central, etc., R. R. Co.*, 101 N. Y. 98 ; *Lohr* v. *Metropolitan E. R. Co.*, 10 N. E. Rep. 528 ; *State* v. *Laverack*, 34 N. J. 201 ; *Pittsburgh, etc., R. R. Co.* v. *Reich*, 101 Ill. 157 ; *Brainard* v. *Missisquoi R. R. Co.*, 48 Vt. 107.

Those having the control of streets and highways may authorize the laying thereon of railroad tracks.   In this manner the public servitude may be abridged, or measurably discharged.   But the private rights of those who have adapted their buildings and improvements to an existing highway, and who are deprived of access to, or are injuriously inconvenienced in a substantial degree in their means of egress from their lots, by the construction of a railroad, are in no

The Indiana, Bloomington and Western Railway Company v. Eberle.

wise affected by the permission obtained from the public authorities. As to such persons, so long as their private and individual interests in the street have not been lawfully acquired, the railroad company remains liable for all special and particular damages resulting directly to their property from the obstruction of any part of the street. In so far as the railroad obstructs, or presents a substantial and injurious interference with, the ordinary means of access to the lot, it is as to the owner an unlawful obstruction. It is a nuisance in the street, and the railroad company becomes a trespasser on the lot-owner's property, whether its structure be laid upon his soil or not.

In the absence of an actual taking of property, or that which is regarded as property, such consequential or incidental damages, as result to the abutting lot-owner from the construction and operation of a railroad upon the land of another, afford no right of recovery. *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Hatch* v. *Vermont, etc., R. R. Co.,* 20 Vt. 49.

In case the structure imposes no additional burden upon his soil, the right of the lot-owner to maintain a common law action for an injury depends upon whether or not the occupation of the street results in damage peculiar to his property, and different in kind from that which is suffered by the community in general. *Terre Haute, etc., R. R. Co.* v. *Bissell,* 108 Ind. 113; *Dwenger* v. *Chicago, etc., R. W. Co.,* 98 Ind. 153; *Sohn* v. *Cambern,* 106 Ind. 302; *Cummins* v. *City of Seymour,* 79 Ind. 491 (41 Am. R. 618); *Ross* v. *Thompson,* 78 Ind. 90; *Hanlin* v. *Chicago, etc., R. W. Co.,* 61 Wis. 515; *Hobart* v. *Milwaukee, etc., R. R. Co.,* 27 Wis. 194 (9 Am. R. 461).

The community in general does not, of course, mean those persons who use the street or highway, and yet reside at such a distance from the railroad as to suffer none of the annoyances or inconveniences incident to its construction and operation. The interest in the street which is peculiar and per-

sonal to the abutting lot-owner, and which is distinct and different from that of the general public, is the right to have free access over it to his lot and buildings, substantially in the manner he would have enjoyed the right in case there had been no interference with the street. The right of access by way of the street is an incident to the ownership of the lot, which can not be taken away or materially impaired without liability to the owner to the extent of the damage actually incurred. In this respect, and in this only, is the interest of the abutting property-owner different in the street in front of, and beyond the line of, his lot, from that of the public.

The location and operation of a railroad upon a public highway may occasion incidental embarrassment and inconvenience to an abutting lot-owner, but until it cuts off or materially interrupts his means of access to his property, or imposes some additional burden on the soil, his injury and damage, while different in degree, are the same in kind as are those of the community at large.

For such merely incidental damages as result from the careful construction and prudent operation of a railroad on the land of another, even though it be in a public street, the adjacent proprietor can not recover. These are injuries common to all those whose lands are in such close proximity to a railroad which happens to be located on the land of another, as to suffer incidental injury therefrom. For such injuries or inconveniences, in the absence of a statute giving him redress therefor, the property-owner is not entitled to maintain an action. *Grand Rapids, etc., R. R. Co.* v. *Heisel,* 38 Mich. 62 (31 Am. R. 306); *Central Branch, etc., R. R. Co.* v. *Andrews,* 30 Kan. 590; *City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379 (40 Am. R. 598); *Rigney* v. *City of Chicago,* 102 Ill. 64.

The practical question still remains,. Does the fact that the appellant constructed an embankment, eleven feet in width, on the opposite side of the street, thereby reducing it in

width, and forcing travel to the side next the plaintiff's lot, which he occupied as a residence, and rendering access thereto "more difficult and inconvenient," affect the plaintiff in a manner so substantially different from the common public as to entitle him to maintain an action for damages?

No general rule can be stated which will define the extent of the interference or deprivation in each case, in order that an action may be maintained. The purposes for which property is used, and its adaptation to the street, in respect to the improvements made thereon, and the width of the area necessary for access, are so various in different cases, that the diminution of the width of the highway might be a serious injury in one case, while in another it might amount to no greater inconvenience than would be suffered by the public in general. This much may, however, be said generally: Where the owner of a lot is entitled to exercise a right, which he possesses in common with the public, and the exercise of which is necessary to the enjoyment of his property in the usual manner, in order to warrant a recovery for an invasion of such right, it must appear that the obstruction complained of presents a physical disturbance of the right so possessed, so as to prevent or impair its use in the manner in which it was theretofore actually used and enjoyed, and the disturbance of the right must have resulted in peculiar damage to and depreciation in the value of the property to which the right is appendant. *Metropolitan Board, etc.,* v. *McCarthy,* 10 Eng. Rep. 1; *Fritz* v. *Hobson,* 19 Am. Law Reg. 615, and note.

There are no facts found in the case before us, from which it can be said that the embankment on the opposite side of the street, in front of the plaintiff's lot, presents any obstruction to the means of ingress and egress to and from the buildings and improvements thereon. It does not appear that he had ever in any manner used any part of the eleven feet on which the appellant's track is constructed as a means of gaining access to his property, nor are there any facts

found from which the necessity or propriety of using that side of the street, in order to approach his lot, is apparent. All that is found is that the obstruction forces the travel over the highway nearer his lot, and makes access thereto more difficult and inconvenient. That, however, does not show that the erection of the embankment presents any substantial interference with his right of access over the highway as it was previously enjoyed and used, nor does it show any inconvenience of a kind different from that to which the community at large is subjected. The highway may be more difficult and inconvenient of passage at that point by all who use it, precisely as it is inconvenient as a means of access to the plaintiff's lot. That the plaintiff, on account of the proximity of his residence, and because he uses the highway more frequently, may suffer inconvenience greater in degree than others, may be conceded. From anything that appears, the inconvenience suffered by him is not different in kind from that suffered by others. Mere inconvenience or disadvantage, so long as the obstruction complained of does not in some substantial degree impair or deprive the plaintiff of the usual and ordinary means of access to his property, can not give a right of action. *Cummins* v. *City of Seymour, supra; Powell* v. *Bunger,* 91 Ind. 64; *Lansing* v. *Smith,* 8 Cow. 146.

Until it is found that the part of the highway obstructed was in some way necessary in order to afford access to, or an outlet from, the plaintiff's property, as he had been accustomed, and had the right to enjoy it, the injury to the plaintiff is of the same kind as that suffered by the community in general. *Venard* v. *Cross,* 8 Kan. 248.

Upon the facts found, the case before us is in strict analogy to that of *Harvard College* v. *Stearns,* 15 Gray, 1, and cases of that class. The case cited rested upon a claim for injury to land, occasioned by an obstruction placed in a navigable river, or public way, whereby the plaintiff's land was rendered more difficult of access, and less valuable. It was held

that no recovery could be had.   *Blackwell* v. *Old Colony R. R. Co.*, 122 Mass. 1.

In so far as the obstruction disrupted and destroyed the means theretofore provided for carrying off the surface water, and for preventing it from flowing upon the plaintiff's land, the damage was of that character for which a recovery may be sustained.

Upon the whole case, our conclusion is that justice requires that a new trial should be ordered, to the end that the facts may be inquired of, with a view to the principles herein set forth.

In respect to the second inquiry : Whether the plaintiff may recover for the permanent depreciation in the value of his property, depends upon the permanent character of the injury, and the frame of the action.   Where the character of the injury is permanent, and the complaint for damages recognizes the right of the defendant to continue in the use of the property wrongfully appropriated, and to acquire as a result of the suit, the plaintiff's title to the right appropriated, we can see no reason why the damages may not be assessed on the basis of the permanent depreciation in value of the property injured, as in *Henderson* v. *New York, etc., R. R. Co.*, 78 N. Y. 423 ; *Lohr* v. *Metropolitan Ele. R. R. Co.*, 10 N. E. Rep. 528; *Wichita, etc., R. R. Co.* v. *Fechheimer*, 12 Pac. Rep. 362 ; Wood Nuisances, section 856 ; *City of North Vernon* v. *Voegler*, 103 Ind. 314.

Where the action is in trespass, to recover for a past injury, treating the obstruction as unlawful, without any recognition of the right of the defendant to continue the obstruction, and acquire the right appropriated from the recovery and payment of a judgment, then the principles controlling the case of *Uline* v. *New York, etc., R. R. Co., supra,* and the cases there cited, should govern.   In that event, only such damages as accrued up to the time of the commencement of the action are recoverable.   An examination of the complaint

in this case does not make it entirely clear which remedy the plaintiff intended to pursue.

For the reasons heretofore given the judgment is reversed, with costs, and a new trial ordered.

Filed April 19, 1887; petition for a rehearing overruled June 21, 1887.