Egbert *et al. v.* The Lake Shore & Michigan Southern Railway Company.

No. 807.

## EGBERT ET AL. *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

DAMAGES.—*Railroad.—Change of Grade.—Intersecting Highway.—Conformation of to Change of Grade.—Approaches.—Injury to Abutting Land.—*Where a railroad company raises the grade of its tracks, and, in order to restore an intersecting highway to its former state as required by section 3903, R. S. 1881, it fills and raises the grade of such street beyond its right of way, and in front of the property of a private, abutting land-owner, thereby materially interfering with such owner's ingress and egress to and from his property, the railroad company is liable to him for the damage done. The approaches to a crossing, whether extending beyond the right of way or not, are a part of it.

SAME.—*Effect of Grant of Right of Way.—*A grant of the right of way for the railroad in such case does not carry by implication the right to raise the street beyond the limits of the right of way, nor release the railroad company from the damages accruing to the abutting land-owner.

SAME.—*Effect of Statutory Authority to Change Grade.—*The fact that the change of the grade of the street was made to conform to the voluntary change of grade of the railroad, under authority of, and in compliance with, a statute, will not relieve the railroad company from liability.

From the St. Joseph Circuit Court.

*L. Hubbard* and *A. Anderson,* for appellants.

*G. C. Green, J. H. Baker* and *O. G. Getzendanner,* for appellee.

GAVIN, J.—The appellants brought this action to recover damages for an injury to real estate. A trial resulted in a finding and judgment for the appellee.

The facts out of which the controversy grew are as follows:

On the 30th of March, 1852, Jeremiah H. Service owned, and was in possession of, the land described in the appellants' complaint, and now owned by them. Said Service, for a valuable consideration, conveyed a tract of land 100 feet wide, for a right of way over and across his lands, to the Northern Indiana Railroad Company, " with the right to construct and maintain a railroad and all necessary ap-

purtenances across and upon the land above designated."
The appellants have acquired the title to these lands, and
the appellee, by consolidation, has succeeded to all the
rights of said Northern Indiana Railroad Company under
said deed of conveyance. In 1853 the Northern Railroad
Company constructed a railroad upon this right of way.
The railroad so constructed continued to be used substan-
tially as constructed until 1888.

In 1881, the town of New Carlisle extended Filbert
street to the north, across the right of way of the appel-
lee, and also by proper proceedings appropriated a strip
of land forty feet wide for a street, called Zigler street,
the fee thereof being in appellants. Zigler street so laid
out lies north of and adjoins the appellee's right of way
so acquired of Service, and it also joins the extension of
Filbert street.

In 1888, the appellee, as a part of a general system of
improving its roadbed, raised the grade of its roadbed
along the above-mentioned right of way. This was done
wholly on and within the company's right of way, ex-
cept in so far as it extended beyond it to make the ap-
proaches for the street crossing, and was done in a careful
and skillful manner. At the crossing of Filbert street the
roadbed was raised three and nine-tenths feet. This
made it necessary to fill in the approach to the crossing,
which was on and along Zigler street, extending for a dis-
tance of 135 feet beyond the line of appellee's right of way,
thereby cutting off and materially interfering with ap-
pellants' ingress to, and egress from, the lands which
fronted on said approach. It is admitted that the fill on
Zigler street was carefully and skillfully put in, and was
necessary to raise the street to correspond with the in-
creased height of the crossing.

There is but one question presented for our determina-
tion. Is the appellee liable for damages sustained by the
appellants, by reason of the filling of Zigler street, whereby

access to their grounds fronting thereon was cut off, or materially interfered with?

It is urged by appellee that it is not thus liable upon three grounds:

·*First.* Because the right to raise the street to correspond to the railroad is carried by and included in the grant of the original right of way by necessary implication.

*Second.* Because appellee, in making the change of grade, was only obeying the statute, and could thereby incur no liability.

*Third.* Because appellee was simply, in pursuance of the statute, exercising the functions of the municipal officers who controlled the street, and who would have had a lawful right to change the grade of the street without liability except for negligence.

We are unable to assent to either proposition. It would be carrying the doctrine of grant by implication beyond all reason to say that where one grants a right of way across his land he thereby releases not only all damages which may result to his land from the construction of the road upon the strip granted, but that he must also be held to contemplate and release damages accruing from the extension of a fill beyond the limit of its right of way, and upon a street which was not in existence until nearly thirty years after the road was built, the fill being made necessary by reason of the company's voluntary change of the grade of its roadbed.

In *Ala. Midland R. W. Co.* v. *Williams*, 92 Ala. 277, it was held that a grant of a right of way across a tract of land did not of itself operate as a release of damages occasioned by the change of grade of an abutting street, so as to make it conform to the grade of the railroad which crossed it. The rights of the railroad company under the grant were restricted to the strip 100 feet in width, and when it encroached upon the land owner outside of this

strip, it became liable to him. *Roushlange* v. *Chicago, etc., R. W. Co.,* 115 Ind. 106.

Appellee's justification of its acts is based upon section 3903, R. S. 1881, subd. 5, by which a railroad company is given the right to construct its road upon or across any highway which it may intersect, but it must restore the highway so intersected to its former state, or in a sufficient manner as not to unnecessarily impair its usefulness.

The provisions of this section apply not only to highways in existence at the time of the building of the railroad, but to those subsequently and lawfully in existence. *Louisville, etc., R. W. Co.* v. *Smith,* 91 Ind. 119.

It is settled law in this State that the "owner of a lot abutting upon a street may have a peculiar and distinct interest in the easement in the street in front of his lot. This interest includes the right to have the street kept open and free from any obstruction which prevents or materially interferes with the ordinary means of ingress to, or egress from, the lots." "To the extent that the street is a necessary and convenient means of access to the lot, it is as much a valuable property right as the lot itself." "Nor can the street be invaded so as to inflict special or peculiar damage or injury upon the adjoining lot owners' property without rendering the wrong-doer liable for such damage." *Indiana, etc., R. W. Co.* v. *Eberle,* 110 Ind. 542; *Decker* v. *Evansville, etc., R. W. Co.,* 133 Ind. 493.

"The right of access by way of the street is an incident to the ownership of the lot, which can not be taken away nor materially impaired without liability to the owner, to the extent of the damage actually incurred." *Indiana, etc., R. W. Co.* v. *Eberle, supra.*

This special interest is without regard to the ownership of the fee in the street. "The owner of the fee in a suburban highway has a special proprietary right distinct from that of the public, and this right can not be taken

without compensation." In a case decided in 1855, it was held that abutters have a private right distinct from that of the public, which even the Legislature could not take away except to appropriate to a public use upon payment of compensation. *Common Council, etc.,* v. *Croas,* 7 Ind. 9. This doctrine has been steadily adhered to by this court. *Kincaid* v. *Indianapolis Nat. Gas Co.,* 124 Ind. 577; *Haynes* v. *Thomas,* 7 Ind. 38; *Lostutter* v. *City of Aurora,* 126 Ind. 436; *City of Indianapolis* v. *Kingsbury,* 101 Ind. 200; *Town of Rensselaer* v. *Leopold,* 106 Ind. 29; *Crawford* v. *Village of Delaware,* 7 Ohio St. 459; *Egerer* v. *New York, etc., R. W. Co.* (N. Y.), 50 Am. and Eng. R. R. Cas., 228; Elliott on Roads and Streets, 526–7–8.

Under these authorities this special interest adheres to the owners of either urban or suburban property.

In this case both the fee which is in the appellants and this special and peculiar interest have been invaded by the appellee. They suffer, by reason of the acts of appellee, not only loss of the same kind and character which is suffered by the public in general, but loss of a different kind accrued by reason of the injury to their special and individual property interests. For injuries of this character, a right of action is given by the law, even though the acts may have been done by statutory direction. *Protzman* v. *Indianapolis, etc., R. R. Co.,* 9 Ind. 467.

In *Evansville, etc., R. R. Co.* v. *Dick,* 9 Ind. 433, the court, by one of its ablest judges, Davison, held the company liable for damages inflicted upon one whose land was not taken, although caused by acts authorized by the statute, with no express liability imposed by the statute. He distinguishes between the acts of those exercising a public trust and private corporations engaged in forwarding their own enterprises, even though quasi public in their character.

It is said, "It is, therefore, evident that the Legislature has no power to authorize, in any case, either a direct or

consequential injury to private property, without compensation to the owner. If, then, such a grant, when expressly made, would be in conflict with the Constitution, we are not allowed to infer that such an authority was intended to be granted, from the mere fact that a railroad was authorized. It seems to follow that the defendants, having voluntarily, and for their own profit, so constructed their road as necessarily to injure the plaintiff, there being no remedy given by their charter, are liable in the present action."

The statute gave to this company the extraordinary right to tear up the public highways and build its road across them, and it is reasonable to construe this authority as a consent to forego thus far the claims of the public to the highway, but it is not reasonable to construe the statute as intending to grant authority to injure and interfere with private property rights, without making compensation therefor.

In this view we are expressly sustained not only by the last case cited, but also by *Indiana, etc., R. W. Co.* v. *Eberle, supra* (p. 546), where it is held that by the authority of those having control of the highways the public servitude may be abridged, but the private rights of those deprived of, or seriously inconvenienced in, their access to their lots are in nowise affected by the permission obtained from the public authorities.

The limitation of the grant to the interest of the public in the highway is recognized in *Indianapolis, etc., Gravel Road Co.* v. *Belt R. W. Co.*, 110 Ind. 5, where it is said: " The statute confers upon railroad companies the power to cross highways, and to do so without the payment of compensation, so far as the public is concerned." * * * " The legislature, acting in behalf of the people, intended to grant, and by the act did grant, to railroad companies the right to cross public highways without responsibility to the public. It was not the purpose to grant to railroad

companies power to violate private rights. That the legislature could not do."

In *Lamm* v. *Chicago, etc., R. R. Co.* (Minn.), 46 Am. and Eng. R. R. Cas., 42, it is said:

" Acts of legislatures, or ordinances of cities, authorizing a railway company to construct its road on public highways or streets, * * * relate solely to the public easement. Such acts give the right as against the public merely. But neither the State nor any of its municipal corporations can grant private property, even for public uses, in this way."

The State authorized appellee's predecessor to build its road across the highways. It did not require the company to do so, but, granting it the privilege, it annexed to the privilege a duty, that of restoring the highway as nearly as possible, and thus making the crossing. The change of grade or the approaches required by reason of a difference between the grade of the highway and railroad were made necessary by the voluntary act of the company for its own convenience and benefit, not for the convenience of the public traveling over this highway, for whom the former level road was preferable to one at a grade.

Nor are we favorably impressed with the theory that the company is to be considered as acting in the capacity of municipal officers, and therefore empowered to change grades without liability, except for negligence.

In *Protzman* v. *Indianapolis, etc., R. W. Co., supra,* it was held that the right of changing grades, inherent in the council, was not to be delegated to a railroad company for its private advantage at the expense of the property owners.

When municipal officers change the grades of streets, they are expected to act for the public with the public accommodation and convenience in view, but when a railroad changes a grade of a highway, as here, it is done without any consideration for the convenience of the public, but

simply with regard to its own profit and advantage. The company grades its own road first as suits its needs, and then brings the highway to it.

We are aware that there are authorities announced by those eminent in the law opposed to the views which we have expressed. Counsel for appellee press with vigor the applicability of the case of *Ottenot* v. *New York, etc., R. W. Co.* (N. Y.), 23 N. E. Rep. 169.

The opinion meets the case in hand very squarely, except it is distinguishable in that the fee of the street was not in the lot-owner, but, as appears from the report of the case in 119 N. Y. 603, the opinion did not meet the approval of a majority of the judges, and its force, as an authority, is thereby somewhat lessened.

In *Conklin* v. *New York, etc., R. W. Co.*, 102 N. Y. 107, and in *Ranenstein* v. *New York, etc., R. W. Co.* (N. Y.), 32 N. E. Rep. 1047, the doctrine asserted by the Ottenot case is largely affirmed, although, in the latter case, the court divides nearly equally.

After giving these cases full consideration, we are constrained to believe that the views we have determined upon are in consonance with equity and justice, and are supported by ample authority within and without our own State.

"Where a railroad raises or lowers the grade of a highway to adjust it to the grade of its track, it is a taking of the property of the abutting owner for which, and the injury to the lots, the company must make compensation." Mills on Eminent Domain, section 199, p. 388.

In 2 Wood on Railway Law, 966, the rule is thus laid down:

"The necessary approaches constructed for the purpose of restoring the streets or highways to their former condition of usefulness under, and as a condition to, the exercise of the privilege, are a part of the railroad structure

authorized by its charter; and in their erection a party incidentally injured has as complete and perfect a remedy against the company for consequential damages as he has for a direct injury caused by the original construction of the railroad."

*Parker* v. *Boston, etc., R. R. Co.*, 3 Cush. 107 (116), was an action for damages occasioned by building the approaches to a bridge by which a highway was carried over a railroad track instead of crossing at grade. The land damaged abutted the highway intersected and the approaches, but did not touch the railroad.

In speaking of the adjustment of the highway to the railroad, the court says:

"Then how, by whom, and in what manner, shall this adaptation * * * be made? Equity would answer, plainly enough, that it is not required to be made for the benefit of the turnpike company, nor of the town; it is an inconvenience to which they are subjected for the benefit and accommodation of the railroad, to which it is essential that it should be kept on a certain grade, whereas the grade of a turnpike or common road may be changed, though with some inconvenience."

It was further held that the raising of the approaches was a part of the franchise given by the charter, and that the bridges on which highways were carried over the railroad, and the approaches to them, were as much a part of the structure authorized by the charter as the railroad itself, and, therefore, within all the provisions for compensation for damages occasioned by laying out and building the road.

In *Bradley* v. *New York, etc., R. R. Co.*, 21 Conn. 293 (294), the same holding is made, and the same general line of reasoning followed. Referring to the approaches and bridge across the highway, the court says:

"The raising of the bridge was necessary in order to

allow of the passing of the engines and cars on the railroad; and the making of the embankment was necessary, in consequence of the raising of the bridge, in order to restore the highway to its former usefulness, which it was made the duty of the defendants to do; and both were raised for the·sole benefit and accommodation of the defendants, and not of the public." And the court, on page 311, expressly disavows the doctrine that the company became clothed with the rights of the public in respect to the restoration of the highway.

These propositions are supported, also, by *Burritt* v. *City of New Haven*, 42 Conn. 174, and *Nicholson* v. *New York, etc.*, *R. R. Co.*, 22 Conn. 74.

While the charters under which the companies acted in these cases were not exactly similar to our statutes, the reasoning and principles advanced apply to the case in hand.

That the approaches are a part of the crossing which the company must construct, see, also, *Town of Roxbury* v. *Central Vt. R. R. Co.*, 14 Atl. Rep. 92; *Farley* v. *Chicago, etc.*, *R. R. Co.*, 42 Ia. 234; *Titcomb* v. *Fitchburg R. R. Co.*, 12 Allen, 254.

The case of *Buchner* v. *Chicago, etc.*, *R. W. Co.*, 56 Wis. 403; and the same case in 60 Wis. 264, are substantially identical with the case in hand in all material features, save that of the grant by implication, and decide the questions against appellees' views.

This case is followed by *Shealy* v. *Chicago, etc.*, *R. R. Co.*, 77 Wis. 653.

It is conceded, in this case, that the fill, or approach, made by the appellee extended beyond its right of way, upon the highway fronting appellant's property, the fee of the highway being ·in appellants. It is also undenied that the means of access to, and egress from, the property were materially and seriously impaired. Appellees must, therefore, respond for the damage done. *Indianapolis, etc.*,

*R. W. Co.* v. *Smith*, 52 Ind. 428; *Roushlange* v. *Chicago, etc., R. W. Co.*, 115 Ind. 106.

The judgment is, therefore, reversed, with instructions to the court below to grant a new trial.

Filed March 16, 1893.