VANDALIA RAILROAD COMPANY *v.* STATE, EX REL. CITY OF SOUTH BEND.

[No. 20,663.　Filed February 23, 1906.]

1. APPEAL AND ERROR.—*Parties Appellant.—Successors.*—Where defendant railroad company, after judgment and before appeal, was consolidated with another company, such consolidated company may appeal, the fact of such consolidation being shown in the assignment of errors.　p. 221.

2. MANDAMUS.—*Duties Imposed by Law.—Contracts.—Corporations.—Charters.*—Mandamus does not lie to compel performance of a pure contract right, but may be used to compel the performance of a duty imposed by express law or by the obligations of a corporation's charter.　p. 222.

3. RAILROADS.—*Highway Crossings.—Duty to Repair.—Statutes.*—Under clause 5, §5153 Burns 1901, §3903 R. S. 1881, railroad companies are required to make safe and convenient crossings at all of their highway intersections, whether such highways were established before or after the construction of the railroads.　p. 223.

4. SAME.—*Street Crossings.—Duty to Provide.—Statutes.—Mandamus.*—Under §5172a Burns 1901, Acts 1895, p. 233, §1, it is the duty of railroad companies whose tracks cross any public streets, avenues or alleys, in any town or city, securely to "grade and plank or gravel" such crossings; and mandamus lies to enforce such duty.　p. 223.

5. MUNICIPAL CORPORATIONS. — *Ordinances.—Railroads.—Repair of Street Crossings.—Contracts.*—A municipal ordinance granting a railroad company a right to use its streets but requiring it to grade the crossings and maintain same safe and convenient, is declaratory of the law (§5172a Burns 1901, Acts 1895, p. 233, §1) and such company's duty therein is not wholly contractual. p. 224.

6. SAME.—*Streets.—Relinquishing Control of.*—Municipal corporations have no power to barter away the present or future control of their streets, alleys or other public places; and they are under a continuing duty to keep them safe.　p. 224.

7. MUNICIPAL CORPORATIONS.—*Ordinances.*—*Statutes.*—*Penalties.*—*Railroads.*—*Street Crossings.*—*Mandamus.*— Although a municipal corporation has by penal ordinance, accepted by a railroad company, and by statute (§§5172a-5172e Burns 1901, Acts 1895, p. 233) the right to construct the street crossings of such railroad and recover the cost thereof with penalty from such company, still it has the right to enforce, by mandamus, the construction thereof by such company.   p. 225.

8. SAME.—*Railroads.*—*Street Crossings.*—*Materials Used.*—*Choice of.*—*Mandamus.*—Where a municipal ordinance required a railroad company to make its crossings convenient, and the statute (§5172a Burns 1901, Acts 1895, p. 233, §1) required it to "grade and plank or gravel" same, upon defendant's refusal to do either, the court may order same to be planked, where so asked in plaintiff's petition.   p. 226.

9. APPEAL AND ERROR.—*Purpose.*—*Review.*—Appeals are provided primarily to have a review of the trial court's rulings. p. 229.

10. PLEADING.—*Theory.*—*Determination of.*—A pleading will be tested as to its sufficiency by the theory upon which it is based; and such theory will be determined by the general scope and tenor of such pleading, and not by isolated statements.   p. 229.

11. SAME.—*Answer.*—*Denial.*—*Confession and Avoidance.*—*Theory.*—A single paragraph of answer can not be both a denial and a confession and avoidance of a cause of action, and its theory will be determined by the general scope of its averments. p. 229.

12. SAME.—*Answer.*—*Confession and Avoidance.*—*Railroads.*—*Contracts.*—*Municipal Corporations.*—An answer, in an action to mandate a railroad company to construct a street crossing over its tracks, that the city established such street without giving such company or its mortgagee any notice, and that such company and such city compromised such matter by such city's agreeing to build the approaches and abutments for a viaduct and the company's agreeing to erect the bridge over the tracks, and that such company is ready and willing to perform, but such city refuses, is in confession and avoidance.   p. 230.

13. MUNICIPAL CORPORATIONS.—*Governmental Powers.*—*Curtailment by Contracts.*—A municipal corporation cannot, by contract, cede away, limit nor control its governmental powers or disable itself from doing its public duties.   p. 231.

14. CONTRACTS.—*Municipal Corporations.*—*Streets.*—*Railroad Crossings.*—*Validity.*—A contract by which a railroad company agrees to construct a viaduct across its tracks at a street cross-

ing in consideration of the municipal corporation's agreement to construct the abutments and approaches and to "maintain and keep in repair said approaches and said viaduct for all time" is void. p. 231.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the State of Indiana, on the relation of the City of South Bend, against the Terre Haute & Logansport Railway Company. From a judgment for plaintiff, defendant's successor in interest, the Vandalia Railroad Company, appeals. *Affirmed.*

*Samuel Parker, John G. Williams* and *Anderson, Du Shane & Crabill,* for appellant.

*Frank H. Dunnahoo* and *Harry R. Wair,* for appellee.

MONTGOMERY, J.—Appellee brought this action against the Terre Haute & Logansport Railway Company for a writ of mandamus to compel said company to open, plank and make safe and convenient for travel the crossing of Calvert street over its right of way, tracks and yard in the city of South Bend. An alternative writ was issued, whereupon the defendant appeared, waived service, and filed its demurrer for want of facts to the application, the alternative writ and to the petition and writ. This demurrer was overruled, and a return filed to which appellee successfully demurred, and, defendant declining to plead further, judgment was rendered in favor of appellee as prayed.

Appellant alleges that by consolidation it has succeeded to the rights of the Terre Haute & Logansport Railway Company, and by proper assignments of error presents for review the action of the court in overruling the demurrer to the alternative writ, and in sustaining appellee's demurrer to the return.

1. The alternative writ set forth the following, among other facts: The city of South Bend is a municipal corporation of this State. The Terre Haute & Logansport Railway Company is a railroad corporation operating a line of railway from Bronson street in said city to the south corpora-

tion line. On November 10, 1884, said city by ordinance, a copy of which is filed with the complaint, granted to said railway company a franchise to operate its said road across the streets and alleys of the city. Said railway company accepted said franchise, and ever since has acted under the same. The express condition of said franchise was that wherever a street or alley of said city was crossed by said railroad it should be made to conform with the grade of such street or alley as then fixed or thereafter established, and so maintained by said company as to cause the least obstruction possible to the passage of persons and vehicles. Said railway intersects Calvert street, formerly known as Elmira street, a public highway of said city, and in use as such by the public, at a point particularly described. Said street is sixty feet wide, and the grade thereof has been established for more than four years, but said company has not opened its real property, right of way or tracks at the point of intersection or made the same conform to the grade of said street, but has refused and still refuses so to do. On December 18, 1903, said city notified said railway company to open up said intersection, and to plank the same, but said company refused and neglected so to do.

It was provided by section four of the franchise ordinance that if after notice the railway company failed to do the things required of it by the ordinance the same might be done by the street commissioner of the city, and the cost thereof, with twenty per cent penalty, recovered from the company in any court of competent jurisdiction.

Appellant argues that the passage of the franchise ordinance by the city and its acceptance by the railway company constituted a contract, that this action is founded upon such contract, and that duties of a corporation arising wholly out of contract relations will not be enforced by writs of mandamus. It is well settled that the use of writs of mandamus is limited to the enforcement of obligations imposed by law; and duties of

2.

a corporation arising wholly out of contract obligations, and not imposed by express law, or by the conditions of its charter, will not be enforced by such writs. *State, ex rel.,* v. *Trustees, etc.* (1888), 114 Ind. 389; *Indiana, etc., R. Co.* v. *Rinehart* (1896), 14 Ind. App. 588; 19 Am. and Eng. Ency. Law (2d ed.), 742.

The general railroad act of this State grants to a railroad company power "to construct its road upon or across any * * * highway * * * so as not to

3.　interfere with the free use of the same, which the route of its road shall intersect, in such manner so as to afford security for life and property; but the corporation shall restore the * * * highway thus intersected to its former state, or in a sufficient manner not to unnecessarily impair its usefulness." §5153 Burns 1901, cl. 5, §3903 R. S. 1881. It has been frequently held that under this statute a railroad company is required to make safe and convenient crossings at the intersections of all highways, whether the same were established and opened before or after the construction of the railroad. *Louisville, etc., R. Co.* v. *Smith* (1883), 91 Ind. 119; *Lake Erie, etc., R. Co.* v. *Cluggish* (1896), 143 Ind. 347, 351; *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276, 278; *Egbert* v. *Lake Shore, etc., R. Co.* (1893), 6 Ind. App. 350, 353; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510, 519; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36, 41; 3 Elliott, Railroads, §1102.

Section 5172a Burns 1901, Acts 1895, p. 233, §1, is as follows: "That it shall be the duty of each railroad company whose road or tracks cross, or shall hereafter

4.　cross, any street, avenue or alley in any incorporated town or city in the State of Indiana; which said street, avenue or alley has been, or shall hereafter be, by addition, plat or otherwise, dedicated to the public use, to properly grade and plank or gravel its said road and tracks at its intersection with and crossing of said street, avenue

or alley in accordance with the grade of said street or avenue, in such manner as to afford security for life and property at said intersection and crossing." It is thus seen that the duty which appellee seeks to have performed by this proceeding is one specifically enjoined by law and imposed by appellant's charter. The performance of a similar duty has been enforced in numerous instances by proceedings of this character. *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489; *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510.

The provisions of the franchise ordinance requiring the railway company to make and maintain safe crossings were simply declaratory of the law as it existed independently of the city's enactment, and it cannot be fairly said that the omitted duty complained of was one growing wholly out of contract obligations. In granting a franchise to use its streets, alleys, or public places, the city exercises its delegated legislative powers, and for that purpose could not by contract barter away its future legislative control over such highways and places. It is the plain and continuing duty of a city to prevent the unnecessary obstruction of its streets, and to see that the same are kept in good order and safe for use by the public. The railway company, a *quasi*-public corporation, is created to facilitate and not to impede travel, and from its nature as well as charter obligations the duty arises of keeping its intersections with highways in good repair and in condition for safe and convenient use by the public. In the case of *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489, 495, this court disposed of a contention like that now made, in the following language: "But this ordinance is not a contract between the railroad company and the city, but simply a grant of the right of way

upon certain conditions and duties subsequent, to be performed by the company. And the proper means by which a corporation may be compelled to perform a plain duty —and the duty is plain in this case—is by a writ of mandate." *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189. See, also, *Seymour Water Co.* v. *City of Seymour* (1904), 163 Ind. 120, and cases cited.

It is next urged that the relator could have constructed the crossing and brought an action for the cost of the same and the penalty as provided in the ordinance, and thereby have secured complete and adequate redress without resort to this extraordinary remedy. It is undeniable that either under the provisions of the ordinance or of §§5172a-5172e Burns 1901, Acts 1895, p. 233, the city might have pursued the course suggested; but the query remains whether such a remedy must be held adequate and exclusive. This question has been answered in the negative in the case of *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489, 494, the court saying: "Can it be said, then, that this would be an adequate remedy? It would seem to us not. Or shall it be said that it is the duty of the city to fill up and grade the streets and alleys so as to make them convenient for passage, etc., at her own expense, in the first instance, and then be compelled to bring an action against the railroad company for reimbursement? If one have a right of action for a grievance against another, either for damages or for the specific performance of an act, it is certainly not an adequate remedy to him, to be compelled in the first instance to lay out $100 for the use of another, and then to have the right simply to recover back his money so laid out by him, and perhaps to get legal interest on his money."

The fact that, in addition to the cost, a specific penalty may be recovered in lieu of legal interest does not affect the principle. It would further seem to be more expedient and conducive to safety that such work as elevating or lowering

railway tracks and constructing crossings should be done by skilled workmen acting under orders from the company concerned, rather than by the inexperienced employes of the municipality.  Our conclusion is that mandamus was an available remedy ·to enforce performance of this duty, notwithstanding the provisions for a different procedure. *State* v. *New York, etc., R. Co.* (1898), 71 Conn. 43, 40 Atl. 925; *State, ex rel.,* v. *Minnesota, etc., R. Co.* (1900), 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656.

It is further insisted that the choice of materials to be used in making the crossing should have been left to the company, and that the provisions of the mandate

8.  requiring the company "to plank the crossing" were not justified by the terms of the ordinance or by the facts stated in the writ.  The ordinance does not purport to specify the materials required to make the crossing most convenient for use.  The ·statute requires the railroad "to properly grade and plank or gravel its said road and tracks at its intersections."  Conceding that, in the first instance, the company had an option as to materials to be used, providing the crossing was put in such condition "as to afford security to life and property," it does not follow that after failure and refusal to construct any crossing, it may justly complain of a choice of materials made by the court.  Appellee's petition asked for a plank crossing, the statute authorized the court to prescribe that material, and upon the facts and circumstances shown the court was warranted in requiring the crossing to be planked.  The writ was not subject to the criticism of being too specific, but properly directed particularly what should be done in the construction of the crossing.  3 Elliott, Railroads, §1106; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, and cases cited.  The demurrer to the alternative writ was rightly overruled.

The return of the defendant below contained in substance the following averments:  That the Terre Haute & Logans-

port Railway Company is a corporation owning and operating a line of railroad from Terre Haute to Bronson street in the city of South Bend. On December 1, 1898, the Terre Haute & Logansport Railway Company, to whom the original franchise was granted, ceased to own said railroad. On October 28, 1903, defendant was served with notice from the board of public works of the city of South Bend to open Calvert street, formerly called Elmira street, across its tracks, and to plank the crossing in the usual manner, and that it failed and refused to do said work because of the following facts: At the time of the passage of said franchise ordinance the place where Calvert, or Elmira, street crosses said railroad tracks was outside the corporate limits of said city, and in 1887 was taken into the corporate limits of the town of Myler, and in 1892 said town was annexed and became a part of said city. On August 12, 1891, Frank S. Stover and thirteen others filed with the board of trustees of said town a petition for the establishment of a street, to be known as Elmira street, over the ground where the relator now claims said street is located. The special proceedings had in connection with the establishment of said street are set out in detail, tending to show that the Terre Haute & Logansport Railway Company was not legally notified of such proceedings. It is shown that prior thereto said company had executed an outstanding deed of trust on its property, and that the trustee therein named was not notified of said proceedings; and subsequently said deed of trust was foreclosed, and upon sale said property was duly transferred to the defendant Terre Haute & Logansport Railway Company.

It is further alleged that in the year 1901 the relator was claiming that by virtue of the proceedings of the board of trustees of the town of Myler, said Calvert, or Elmira, street was located and established across the right of way, land, tracks and yard of the Terre Haute & Logansport Railway Company which, because of the special facts

pleaded, said company in good faith denied; that on January 17, 1902, for the purpose of adjusting and settling said conflicting claims, the relator, acting by its board of public works, entered into a contract whereby said railway company agreed to construct a steel viaduct over its tracks at said alleged street, and the relator agreed to construct the approaches thereto, and each to perform other agreements therein set out, which contract was in writing and was by ordinance duly ratified by the common council of said city. The viaduct agreement and ratifying ordinance are set out in full as part of the return. The agreement provided that in lieu of a grade crossing, the railway company should construct a steel viaduct above and across its tracks at Elmira street, with a paved roadway thirty feet wide and sidewalks on each side eight feet wide, the bottom of the same to be twenty-two feet above the top of the rail, such work to be done when the city shall have money in hand sufficient to build the approaches to said viaduct, and through its board of public works and common council shall have ordered the approaches built, appropriated the necessary funds, and notified the railway company thereof, in writing; and when completed the city should "maintain and keep in repair said approaches and said viaduct for all time." It is further alleged that the construction of said viaduct would cost $30,000, and that the railway company is now and at all times has been able, ready and willing to perform all its agreements in said contract contained, but that the relator has performed none of its agreements and given said company no notice to construct said viaduct, and that the public had acquired no right to use the alleged street across its yard and tracks, except in the manner set out and by the special proceedings of the board of trustees of the town of Myler, which it is charged were wholly insufficient. Wherefore defendant says it should not be compelled to open the alleged street across its tracks and yard at grade.

Appellant's counsel assert and argue an insufficiency of the notice and return of service in the special proceedings of the board of trustees of the town of Myler for the establishment of Elmira street, a want of notice to the mortgagee of the property to be appropriated, and, in consequence, a taking of property without due process of law in violation of the fourteenth amendment to the Constitution of the United States.

Appellee's counsel insist that the only question presented to and considered by the circuit court upon the demurrer to the return was the validity of the agreement therein pleaded.

Appeals are provided primarily to enable parties to secure a review of the decisions made by trial courts, and, generally speaking, upon appeal parties will be held to the position and theory assumed and maintained by them in the court below. In the preparation of issues for trial it is necessary to require parties to adopt and make their pleadings conform to some definite theory. When a pleading has been framed upon a manifestly definite theory, it must be good upon that theory or it will not be good at all. A pleading must be judged from its general tenor and scope, and when it assumes to proceed upon a distinct theory it can not be made good on some other by casting into it isolated statements, which if fully pleaded in separate paragraphs might constitute a cause of action or defense. *Western Union Tel. Co.* v. *Young* (1884), 93 Ind. 118; *Western Union Tel. Co.* v. *Reed* (1884), 96 Ind. 195, 198; *Balue* v. *Taylor* (1894), 136 Ind. 368; 21 Ency. Pl. and Pr., 652.

The manifest theory of the pleader was to show that a reasonable and *bona fide* controversy existed as to the validity of the proceedings for the establishment of Elmira street by the board of trustees of the town of Myler, as an inducement to and consideration for entering into the compromise agreement pleaded, and that said contract having been legally executed and not re-

scinded, the railway company was thereby absolved from the duty declared upon, to construct and maintain a grade crossing at the point in controversy. "A single paragraph of answer can not perform the double function of denying the cause of action, and of confessing and avoiding it. It must be one thing or the other, but it can not be both; and its character, in this respect, must be determined from the general scope of its averments." *Kimble* v. *Christie* (1876), 55 Ind. 140, 144. The return under consideration was intended to confess and avoid the duty sought to be enforced, and its sufficiency must be determined upon that theory. This conclusion forbids a discussion of the legality of the various steps taken in the proceedings to establish Elmira street, as well as the constitutional question raised.

The only question remaining for decision is the validity of the contract made between the railway company and the city, for the construction and maintenance of a viaduct. The charter of the city of South Bend authorized its board of public works to "design, order, contract for and execute the erection of any culvert, bridge, way, viaduct, tunnel or aqueduct within such city, or to enter into a contract with any company or individual for the joint erection and maintenance by such company or individual and such city of any such structure. * * * Provided, that such contract shall in all cases be submitted by said board to the council of such city and approved by them by ordinance before the same shall take effect." §4190n8 Burns 1901, Acts 1901, p. 198, §72.

It is appropriate to note that the necessity, if any, for the viaduct provided for by the agreement pleaded was created by the existence and operation of the railroad. If the street was lawfully established across the tracks and ground of the railway company, a fact not denied by the return as we construe it, then the duty of making and maintaining a safe and convenient grade crossing devolved upon

the company; and in such case the board of works would not be justified either in erecting or maintaining a viaduct solely at the city's expense. The authority, if any existed, for entering into the contract must be found in that part of the statute which empowered the board, with the approval of the council, to make a contract with any company for the joint erection and maintenance of such a structure. The power of the city to make this contract is in nowise affected by the circumstance that the agreement was the result of a compromise and settlement of an existing controversy. It is made to appear that the work contemplated has not been performed, and so far as disclosed no rights have attached by virtue of the agreement. The viaduct as planned was to be forty-six feet wide, being fourteen feet less than the width of the street, and was to be maintained solely by the city "for all time."

Municipal corporations of this State are given exclusive control over their streets and alleys. This authority is conferred for the benefit of the public, and from it

13. arises a continuing duty on the part of the city to exercise legislative control over its streets and alleys at all times and places when demanded by the public good. A municipal corporation has no power, by contract, ordinance or by-law, to cede away, limit or control its legislative or governmental powers, or to disable itself from performing its public duties. 1 Dillon, Mun. Corp. (4th ed.), §97; Elliott, Roads and Sts. (2d ed.), §657; *Schipper* v. *City of Aurora* (1889), 121 Ind. 154, 159, 6 L. R. A. 318; *City of Peru* v. *Gleason* (1883), 91 Ind. 566; *City of Indianapolis* v. *Indianapolis, etc., Coke Co.* (1879), 66 Ind. 396.

If the contract relied upon by appellant is valid its obligations are secure against impairment, not only by the city of South Bend, but also by the legislature itself;

14. and the viaduct, once constructed, must be maintained by the city to the end of time, and the company and its successors be forever relieved of all duties

now owing or hereafter to be imposed on account of the grade crossing. It is not at all improbable that the future policy of the State and the safety and convenience of the people may require the elevation or lowering of railroad tracks through cities and populous districts, and the preservation of ordinary highways upon natural grades free from obstructions. It is impossible to anticipate the changes which in the future may be found expedient, and the police regulations which may become necessary at this particular crossing. The viaduct contract in question provides for single maintenance by the city, instead of joint maintenance by both the parties, and it purports to bind the city and to limit and deny for all time its legislative and police control over this part of the street. That these provisions of the agreement are unauthorized and invalid is not only approved by reason and sound policy, but well supported by authority.

In the case of *State, ex rel., v. Minnesota, etc., R. Co.* (1900), 80 Minn. 108, 116, 83 N. W. 32, 50 L. R. A. 656, the supreme court of Minnesota, in holding a very similar contract void, said: "It can not be that the common council of 1888, by the passage of a resolution providing for the construction of a bridge sixty feet in width in a street one hundred and twenty feet wide, to be perpetually maintained by the city, could limit or control the legislative action of its successors, or could abdicate its right, as future necessity should require, to compel the construction and maintenance of a bridge or viaduct of such dimensions, width, and construction as should, as nearly as may be, restore the street to its former condition of usefulness."

In the case of *Gale v. Village of Kalamazoo* (1871), 23 Mich. 344, 9 Am. Rep. 80, in discussing a kindred contract, Cooley, J., said: "What would be thought proper for the village this year might be found worse than useless the next, and no official prescience could determine with absolute or even tolerable certainty what changes a few years might

work. Indeed it is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise. Those powers are conferred in order to be exercised again and again, as may be found needful or politic, and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors." See, also, *New York, etc., R. Co.* v. *Village of New Rochelle* (1899), 60 N. Y. Supp. 904; *Brimmer* v. *City of Boston* (1869), 102 Mass. 19; *Milhau* v. *Sharp* (1863), 27 N. Y. 611, 84 Am. Dec. 314; *City of Oakland* v. *Carpentier* (1859), 13 Cal. 540; *Mott* v. *Pennsylvania R. Co.* (1858), 30 Pa. St. 9, 72 Am. Dec. 664; *Mayor, etc.,* v. *Bowman* (1861), 39 Miss. 671; *Dingman* v. *People* (1869), 51 Ill. 277; *Matthews* v. *City of Alexandria* (1878), 68 Mo. 115, 30 Am. Rep. 776.

The agreement entered into between the relator and the railway company was, on the part of the city, an unwarranted surrender of legislative power and control over the crossing, and an unauthorized assumption of the burdens of another, and is invalid and void. We have already shown that the specific duty of making and maintaining a grade crossing was imposed upon the railway company, and, the agreement relied upon to provide a viaduct in lieu of the crossing being invalid, it follows that the return was insufficient, and the demurrer thereto rightly sustained.

Finding no reversible error, the judgment is affirmed.