Kolmel's consent. There is no evidence thereof. Second. The affidavit fails to show that Kolmel's claim to the boat is "without collusion." There is neither express assertion to that effect nor a statement of facts and circumstances from which such conclusion can be reasonably drawn. This is also essential. Boskowitz v. Boskowitz, 124 App. Div. 849, 109 N. Y. Supp. 490; Helene v. Corn Exchange Bank, 96 App. Div. 392, 89 N. Y. Supp. 310. Third. The order contains no provision for the delivery of the property or of its value by defendant to such person as the court directs. The moving affidavit asserts that Kolmel, and not defendant, has possession of the boat, and has had since August 2, 1911. Direction for the actual delivery thereof could not, therefore, be given.

[4] But an action of replevin will lie against one who has voluntarily and wrongfully transferred the possession of property of another which upon demand he is bound to deliver. Sinnott v. Feiock, 165 N. Y. 444, 59 N. E. 265, 53 L. R. A. 565, 80 Am. St. Rep. 736; Nichols v. Michael, 23 N. Y. 264, 80 Am. Dec. 259; Barnett v. Selling, 70 N. Y. 492. In such case the alternative provision of the statute, that the value of the property which is the subject of the litigation must be delivered to such person as the court directs, becomes applicable. This defect is likewise fatal. Mason v. Rice, 85 App. Div. 315, 82 N. Y. Supp. 541.

The order must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, without prejudice to an application to the county court to renew the motion upon sufficient papers and upon such terms as may be just. All concur.

---

O'BRIEN et al. v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. January 19, 1912.)

1. EMINENT DOMAIN (§ 106*)—DAMAGES TO PRIVATE EASEMENTS OF ACCESS.

Where an embankment built on a street by a railroad company under an order of the public service commission, did not invade a street on which lots of individuals abutted and over which they had a private easement of access, but a new outlet when constructed would give them access and merely lengthen by several hundred feet the distance from their lots to the public part of the street, they were not entitled to damages for a permanent interference with their private easement, but could only recover damages for a temporary interference pending the construction of a substituted way of access.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 282–289; Dec. Dig. § 106.*]

2. EMINENT DOMAIN (§ 106*)—DAMAGES TO PRIVATE EASEMENTS OF ACCESS.

The court, in determining the damages to a person's private easement of access to his property abutting on a street caused by the construction by a railroad company of an embankment on another street, may not consider the cost of the construction of sewers and mains in the surface of the street in which the embankment is located where nothing but the width of the embankment, and its use by the company will present any obstacle to the laying of the sewers and mains, and the work of such construction can be done without unusual difficulty.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 106.*]

---

3. EMINENT DOMAIN (§ 106*)—DAMAGES TO PRIVATE EASEMENTS OF ACCESS.
    Plaintiff seeking to recover damages to his private easement of access to his property abutting on a street caused by the construction by a railroad company of an embankment on another street, may not recover damages resulting from loss of police and fire protection where the substituted way of access will, when completed, present equal, if not better, facilities for such protection.
    [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 106.*]

Appeal from Special Term, Westchester County.

Action by John O'Brien and others against the New York Central & Hudson River Railroad Company and others. From a judgment for plaintiffs, defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, WOODWARD, and RICH, JJ.

George H. Walker, for appellants.

Thomas A. McKennell (George C. Appell and Alfred H. Appell, on the brief), for respondents.

JENKS, P. J. The judgment for the plaintiffs is for damages to their private easements of access. They assert these rights in that their property was laid out originally into lots upon certain streets on a map made by Kurth and filed in the register's office of Westchester county in 1854 and 1859, respectively, and that their conveyances were made with reference to such map. Pursuant to law the Public Service Commission of the Second Department have approved and have adopted a plan which required the defendant to eliminate certain grade crossings. This plan required the building of a solid embankment to support the defendant's tracks. The construction of this embankment is the alleged offending of the defendant.

The plan also required the extension and reconstruction of a road called the Bronx Place road. The embankment is to be built upon a way known as West Railroad avenue, extending northerly and southerly, whereon are now laid the tracks of the defendant. Certain streets which appear as Bronx, Howard, and Putnam streets on the Kurth map run easterly up to West Railroad avenue and also, to the west, cross or run into the streets upon such map upon which the lots of the plaintiffs face. The sides of some of the plaintiffs' lots adjoin such streets.

The Special Term found that prior to the building of the embankment plaintiffs' access to the business part of the city of Mt. Vernon was by way of Putnam, Bronx, and Howard streets to and through West Railroad avenue to Oak street and Mt. Vernon avenue; that is, the plaintiffs could travel easterly by a block or two blocks by either of these streets, and thence would proceed along West Railroad avenue to the south. The court further decided that the said Bronx Place road when constructed will provide an "outlet" to the plaintiffs to the west and south, but the result of the substitution "will be to make the distance from the plaintiffs' premises to Mt. Vernon avenue and the business part of the city of Mt. Vernon greater by several hundred feet than is the distance by way of West Railroad avenue and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bronx, Howard, and Putnam streets." The court also considered the corollary that the plaintiffs would be deprived of access *from* West Railroad avenue through those said streets, also certain difficulties in the laying of sewers, gas or water pipes, and also interference with police and fire protection of the territory. The conclusion of the court is that the "damage done to the plaintiffs' property by the building of the railroad embankment, and the shutting off of Bronx, Howard, and Putnam Streets, is the sum of $15,000." Thereupon an injunction was awarded with alternative of the payment of that sum, and the defendants appeal.

[1] Aside from the question of main or pipe construction and of police and fire protection, the judgment seems to rest upon the determination that the substituted route is longer by several hundred feet. I think that this fact is not sufficient to support the judgment, for the substitution of a longer route or of one that would make the plaintiffs' premises less accessible did not deprive the plaintiffs of any vested right or cause them any injury which must be compensated. Matter of Grade Crossing Commissioners, 166 N. Y. 69, 59 N. E. 706, citing Coster v. Mayor of Albany, 43 N. Y. 399–414; Kings County Fire Ins. Co. v. Stevens, 101 N. Y. 411, 5 N. E. 353; Egerer v. N. Y. C. & H. R. R. R. Co., 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381; see, too, Fearing v. Irwin, 55 N. Y. 486; Reis v. City of New York, 188 N. Y. 58–68, 80 N. E. 573; Pearson v. Allen, 151 Mass. 79, 23 N. E. 731, 21 Am. St. Rep. 426; Putnam v. B. & P. R. R. Co., 182 Mass. 351, 65 N. E. 790; Dantzer v. Indianapolis Union R. Co., 141 Ind. 604, 39 N. E. 223, 34 L. R. A. 769, 50 Am. St. Rep. 343; Dodge v. Penn. R. R. Co., 43 N. J. Eq. 351–363, 11 Atl. 751, affirmed on opinion below 45 N. J. Eq. 366, 19 Atl. 622; Heller v. Atchison, T. & S. F. R. R., 28 Kan. 625.

I do not lose sight of the fact that the plaintiffs assert the property right of a private easement of access, but I think that the principle is applicable to the case at bar. Decker v. Evansville, Suburban & Newburgh Railway Company, 133 Ind. 493, 33 N. E. 349; Dantzer v. Indianapolis Union R. Co., supra; Pearson v. Allen, supra; Reis v. City of New York, supra; Egerer v. N. Y. C. & H. R. R. R. Co., supra; Heller v. Atchison, T. & S. F. R. R., supra. In Decker's Case (supra), the court, per Coffey, C. J., say: "It is settled law in this state that the owner of a lot abutting upon a street may have a peculiar and distinct interest in the easement in the street in front of his lot. This interest includes the right to have the street kept open and free from any obstruction which prevents or materially interferes with the ordinary means of ingress and egress to and from his lot. This is an interest distinct from that possessed by the general public, and is a right appendant to the lot and the improvements thereon. Such means of ingress and egress are as much property as the lot itself. But whether the owner of a lot abutting upon a street may maintain a common-law action, where a structure in the street imposes no new burden on the soil owned by him, depends upon whether or not the occupation of the street with such structure results in damage to his property peculiar and different in kind from that which

is suffered by the community in general. Terre Haute, etc., R. R. Co. v. Bissell, 108 Ind. 113, 9 N. E. 144; Dwenger v. Chicago, etc., R. W. Co., 98 Ind. 153; Sohn v. Cambern, 106 Ind. 302, 6 N. E. 813; Indiana, etc., R. W. Co. v. Eberle, 110 Ind. 542, 11 N. E. 467, 59 Am. Rep. 225. The community in general does not mean those who use the street, and yet reside at such a distance from the railroad, if such be the obstruction of which complaint is made, as to suffer none of the annoyances incident to its construction and operation, but it means those who reside in the immediate vicinity of the railroad, and are subject to the inconveniences incident to such a structure. The location and operation of a railroad upon a public highway may occasion incidental inconvenience to an abutting landowner, but until it cuts off or materially interrupts his means of access to his property, or imposes some additional burden on his soil, his injury is the same in kind as the community in general. Injuries which result from the careful construction and operation of a railroad on the land of another are common to all those whose lands are in close proximity to such road, and for such injuries there can be no recovery in the absence of a statute entitling the owner to maintain such action. Grand Rapids, etc., R. R. Co. v. Heisel, 38 Mich. 62, 31 Am. Rep. 306; City of Chicago v. Union Building Association, 102 Ill. 379, 40 Am. Rep. 598; Rigney v. City of Chicago, 102 Ill. 64; Indiana, etc., R. W. Co. v. Eberle, supra." And see the discussion of Brewer, J., in Heller v. Atchison, T. & S. F. R. R. (supra).

This is not a case of an unlawful obstruction, for the embankment must be regarded as duly authorized for a public purpose—in fact made under legal compulsion. Matter of Grade Crossing Commissioners, supra; Rauenstein v. N. Y., L. & W. R. R. Co., 136 N. Y. 528, 32 N. E. 1047, 18 L. R. A. 768. Nor does it present the condition of invasion upon the streets whereon the lots of the plaintiffs front. Certainly the substituted road is safer and better. The old way of access as determined by the court was along Railroad avenue, which was but 25 feet wide west of the existing tracks, and required passing over the two dangerous grade crossings. The intersection of Howard street and West Railroad avenue was 20 feet above the level of plaintiffs' premises. None of these "streets" as laid out upon the Kurth map west of Railroad avenue, on which tract are situated the plaintiffs' premises, has ever been graded or improved save Monroe street, which was graded in 1854 for 300 or 400 feet north of Howard street. Howard street west of the railroad has only been used to drive upon the lands of the plaintiffs for sod or sand, or to reach a certain electric light plant. Putnam street has never been used save for like purposes of hauling any sod or sand, and Bronx street has never been used. None has been marked by any distinct or defined lines, and the said tract as shown on the Kurth map does not unite with or have any connection with any public highway or street or right of way east of the plaintiffs' premises. It appears that these premises are more available and useful for manufacturing and for the homes of employés than for other residential purposes. Bronx Place road, the substituted route, is to be substantially of level grade, and is

to be a public highway throughout, 40 feet in width, without any tracks thereon. And the weight of the testimony is that such a highway will afford a safer, an easier, and a more commodious way than that which may now exist.

[2] I think that the court should not have taken into consideration the sewer and other mains or pipes which are to be laid beneath the surface of the earth, for the reason that the question in this case involves only easements of access which are confined to the surface of the soil. Sutton v. Groll, 42 N. J. Eq. 213, 5 Atl. 901. But in any event, the court found that nothing but the width of the embankment and its use by the defendant would present any obstacle to the laying of mains and pipes, and that such work could be done without unusual difficulty. It appeared also that there is an existing sewer underneath the tracks at Howard street, and that a sewer is now under construction in this territory, with which connections are practicable.

[3] If the question of police and fire protection is to be considered *in the aspect of access to the territory*, it would seem that Bronx Place road, as projected and constructed, even if it involved travel over a greater distance, would, in comparison with alleged existing rights of access, present equal if not better facilities.

Even if the court should find that there was no permanent injury as to the right of access when the improvement was completed, I am not at all prepared to say that, if while the work was doing no proper substituted right of access was afforded to the plaintiffs, they could not have damages therefor. For I think quite to the contrary. Putnam v. B. & P. R. R. Co., supra, citing Penney v. Commonwealth, 173 Mass. 507, 53 N. E. 865, 73 Am. St. Rep. 312; Edmands v. Boston, 108 Mass. 535.

The judgment must be reversed, and a new trial be granted, costs to abide the final award of costs.

HIRSCHBERG, WOODWARD, and RICH, JJ., concur. THOMAS, J., not voting.