Milton Albert, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Interstate Route 503-1-7.2, Thruway to existing Route 9W, Orange County, Map No. 167, Parcel No. 219.
The aforesaid map and description were filed in the office of the Secretary of State on the 1st day of May, 1962; and in the office of the County Clerk of Orange County on the 10th day of September, 1962; and personal service was made on the claimant on the 17th day of June, 1963.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 22d day of April, 1965 and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the Orange County Clerk’s office a copy of which is attached to the claim and same is incorporated herein by reference.
Claimant was the owner of the property by reason of a deed from Alfred D. Stewart, grantor, to Charles W. and Ira D. Conklin, grantees, recorded in the Orange County Clerk’s office on the 18th day of February, 1946, in Liber 985 of Deeds at page 256 and a deed dated November 8, 1948 from Charles W. Conklin, grantor, to Ira D. Conklin, grantee, recorded in the Orange County Clerk’s office on the 10th day of November, 1948, in Liber 1104 of Deeds at page 278.
*1018 Before the appropriation the property consisted of 2.23± acres of land. The property was located on the east side of Union Avenue in Newburgh. It was an irregularly shaped parcel that “ dog-legged ” to the south as it extended in from Union Avenue. On Union Avenue it had a frontage of 50.17+ feet. This width extended back for 128± feet. There, the parcel widened out to about 150± feet and extended southerly in an irregular plot more particularly described below.
Beginning at the northerly end of the Union Avenue frontage, the northerly property line went eastward a distance of 128.35± feet, then southeasterly 103.34± feet, then southerly 382.16± feet, then westerly 147.06± feet, and then southerly again 70± feet to the rear line. The rear line went westerly 90.3± feet. The westerly line then ran from the afore-mentioned rear line in a northwesterly direction a distance of 75.42± feet, then northeasterly along a stream or ditch 39.85± feet, then along the same .stream or ditch (a) northwesterly 77.8± feet, (b) northeasterly 124.75± feet, (c) northerly 121.34± feet and (d) northwesterly 86.9± feet, then northeasterly 148.6± feet, then northwesterly to the east line of Union Avenue, 128.35 ± feet. The property was level, at grade and consisted of vacant land.
The highest and best use of claimant’s property before the appropriation was for commercial and industrial use, as zoned, and the highest and best use of claimant’s remaining property after the appropriation was the same.
The subject proceeding appropriated approximately 0.338± acres of claimant’s property. The appropriated parcel cut across at approximately the middle of the back portion of claimant’s tract and divided claimant’s holding into two sections— the northern portion being 1.18± acres and the southern portion being 0.712± acres. The appropriated parcel was almost rectangular in shape being 100± feet in width on the westerly side and 92 ± feet in width on the easterly side. The northerly side (toward Union Avenue) was 180± feet in length (this boundary comprised of two courses, one 105± feet in length and one 75± feet at a slight angle), and the southerly line was 194± feet (comprised of two courses, also; one 174± feet and one of 20± feet also at a slight angle). The court has viewed the property.
Claimant’s appraiser, as he amended his appraisal at the trial, valued the entire property before the taking at $41,000 and after the taking at $32,600. This resulted in a difference of $8,400 which, in his opinion, was the total damage suffered by the claimant. His land valuation was $18,500 an acre based on three comparable sales some two to three years after the State’s *1019 taking of the subject property. This resulted in a land valuation of $6,300 for the ,338± acres directly taken. To this he added $1,000 for a cost to cure related to the northern remaining portion and $1,000 for a cost to cure relating to the remaining southern portion. These two items included the installation of culverts and fill to obtain access to these portions from the new highway being installed there (Stewart Avenue) during the course of construction and also for the cost of a gate and fencing on the theory that the new Stewart Avenue had the-effect of exposing the back of claimant’s property to the risk of theft and vandalism of personal property and equipment stored thereon. In addition, there was a $100 figure for the difference between his appraisal of the benefit to the northern portion as against severance damage to the southern portion.
The State’s appraiser also amended his appraisal during the trial and valued the property before the taking at $11,000 — based on a $5,000 per acre valuation. His after value was $9,300 and his total damage, therefore, was $1,700 for the direct taking. He ascribed no consequential damages to the remainders and took the position that they were actually benefited by the installation of the new Stewart Avenue. He pointed out, for example, that the property had three public highway frontages after the taking instead of the single 50-foot frontage on Union Avenue before the taking.
Based on the court’s careful review of the appraisals, testimony at the trial, exhibits at the trial, consideration of comparable sales, and the court’s view of the property on two separate occasions, the court finds as follows:—
1. The claimant made a claim at the trial that it was his plan to build another storage building similar to the one which he did build on the northern portion at about the time of the taking, which faces upon the new Stewart Avenue and which utilizes ingress and egress from Stewart Avenue (see claimant’s Exhibit 1 in evidence). The State responded to this by introducing Exhibit L in evidence, which was an exact size replica of the storage building on claimant’s Exhibit 1 and by showing how a building of similar size could be located on the southern portion after allowing for the 40-foot zoning setback required by the town. The court finds that such a building could be constructed on the southern portion, either parallel with or perpendicular to the setback line and still leave room on both sides of such building for ingress and egress to the remaining back portion of the southern remainder. In any event, the claimant’s appraisal, as revised at the trial, does not follow *1020 through on the basis of consequential damage for inability to construct such a building.
2. The court finds that claimant’s comparable sales occurred well after substantial increases in market values occurred because of, among other reasons, the State’s takings and highway constructions in the area. Furthermore, claimant’s com-parables were much better properties and had better frontages than the 50+ feet claimant had on Union Avenue. Accordingly, the court rejects claimant’s $18,500 per acre valuation for the subject property. Bather, the court finds that the State’s $5,000 per acre valuation to be appropriate for the fair market value of the subject property and points to the State’s comparable sales Nos. 15, 4, 8 and 9, some of which occurred before and some after the taking, as supporting such $5,000 per acre valuation as of the date of the State’s taking of a portion of the subject property. Based on such finding, the court accepts the State’s $1,700 valuation as the fair market value of the .338± acres taken by the State.
3. With respect to claimant’s items for cost to cure and net severance damage, totaling $2,100, the court finds that the $1,000 amount claimed to provide for temporary access to the southern portion and for a gate and fencing should be awarded to the claimant. (As to justification for allowing for the cost of the culvert and fill for such temporary access during construction, see O’Brien v. New York Cent. & Hudson Riv. R. R. Co. [148 App. Div. 733, 738]; Morton v. State of New York [8 A D 2d 49, 53, app. dsmd. 6 N Y 2d 993]; J. Hughes Corp. v. State of New York [199 Misc. 979, 980]; Nichols, Eminent Domain [3d Ed., vol. 2, § 6.4442, subd. [2] and vol. 4, § 14.24]; and as to justification for allowing for the cost of the gate and fencing, see New York State Elec. & Gas Corp. v. Belard Props. [2 A D 2d 791], and Mitchell v. State of New York [20 Misc 2d 374, 379].) This is because the court finds that during the course of construction claimant was unable, without installing the culvert and fill, to utilize the southern portion and because the gate and fencing became necessary by virtue of the exposure to theft and vandalism of personal property and equipment stored on the southern portion.
With respect to the northern portion, as it faced upon new Stewart Avenue, the court views the matter differently. Access during construction of Stewart Avenue was still possible by way of the frontage on Union Avenue and, therefore, no award should be made for culverts and fill to provide temporary access off new Stewart Avenue during construction. However, the northern portion, as it faced on new Stewart Avenue, was mqde *1021 open to theft and vandalism and, accordingly, the court finds an allowance for a gate and fencing to be appropriate and, accordingly, awards $500 of the $1,000 claimed for the northern portion.
The court rejects the $100 claim for severance damage value to the southern portion over the benefit to the northern portion. The court views both portions as having benefited from the construction of the new Stewart Avenue and the making available of public highway frontage to the back portion of the subject property.
The court totals its award as follows; —
Direct taking .......................$1,700
Cost to cure allowed items............ 1,500
total .......................$3,200
and finds that such $3,200 is the fair market value of the property taken from the claimant and the amount by which he has been damaged. The claimant is entitled to an award therefor together with appropriate interest.
The claimant is awarded the sum of $3,200 for all damages direct and consequential, with interest thereon from September 10,1962 to March 10,1963 and from April 22,1965 to the date of entry of judgment herein, except that pursuant to an order of the court filed May 7, 1968, interest shall not be allowed for the period May 22,1968 to September 12,1968.
The State’s motion to strike claimant’s original appraisal is now denied — the appraisal was amended at the trial to relate solely to the property personally owned by the claimant.